---

# SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF JAMES W. BEEKMAN TO HAVE CERTAIN ASSESSMENTS FOR REGULATING AND GRADING FIRST AVENUE FROM THIRTY-SEVENTH TO NINETY-FIRST STREETS VACATED.

There is no statute requiring that an *assessment for regulating and grading streets*, &c., in the city of New York, shall be made only *after the completion of the work*

If the assessment precedes the performance of the work, an *estimate* of the expense must be first made; but after the work has been completed, and the

In the matter of James W. Beekman.

expense has been paid or incurred, or definitely ascertained, the estimate is superfluous.

Where all the work has been contracted for, but a portion of it only has been completed when the assessment is made, an *estimate* is necessary in order to ascertain the amount to be assessed.

It is not necessary that the *duties* to be performed by the assessors should be *named in the ordinance*. The law has prescribed the duty which they are to perform.

Where the *assessors* consisted of three members, two of whom were appointed by original ordinance in 1856, and one by the board of commissioners of taxes under the act of 1859, in place of one of the original assessors who had resigned after the assessment list had been reported to the board of revision; and the board, after such resignation, returned the list to the assessors *for correction*:

*Held*, that it was a legal irregularity for the *two* original assessors to proceed to *correct the assessment*, without inviting or requesting the other recently appointed assessor to act with them.

The statutory rule, as well as the rule of the common law, applicable before the act of 1859, which authorizes a majority of the board of assessors to be appointed under that act, to make estimates and assessments, requires all the members to *meet and consult*, although a majority may *decide*, unless special provision is otherwise made.

It may be lawful for two to act, if one neglects or is unable to perform duty as an assessor, but it is illegal to exclude one assessor from acting, *intentionally*.

*New York General Term, November,* 1865.

*Before* INGRAHAM, *P. J.*, LEONARD *and* BARNARD, *Justices*.

THE coporation of New York adopted an ordinance that First Avenue, from Thirty Seventh to Ninety First streets, be regulated and graded. Charles McNeill, Jacob F. Oakley and William a Dooley were, by the ordinance, appointed assessors "to make a just and equitable assessment of the expense of conforming to this ordinance among the owners and occupants," &c.

The work was divided by the street department into three sections, and to enable the contractor upon one section to get money pending the work, the assessors named in the ordinance proceeded to lay an assessment for the whole work, although the work had not been done, and no estimate for said work had been made by any persons authorized so to do by the common council, or having any authority for that purpose. The assessment so made by them was sent by the assessors to the board of revision and correction of assessments, December 21st, 1863, and was in the hands of that board on the 31st day of December of that year, when

Charles McNeill, one of the assessors, resigned his office and entered upon his duties as member of assembly, to which office he had been elected. Errors having been found in the assessment, on the 13th day of January, the list was returned to the assessors for correction. The list was received by the remaining two assessors, and by them nearly all the items in the assessment list were increased, including those upon the property of petitioner, McNeill not meeting nor conferring with the assessors.

The assessment was vacated upon the proofs by the justice before whom the proceedings were had, and from his judgment order an appeal is taken on the part of the corporation.

JOHN E. DEVELIN, *counsel to the corporation.*

This is an appeal from a judgment rendered at special term, vacating the above assessment as to the property of the petitioner. The objections to the assessment are as follows:

*First.*—That the work is not completed.

*Second.*—That only two of the assessors acted in the correction of the list.

*Third.*—That various unauthorized and excessive items of expense have been included in the assessment.

I. It was not irregular to make the assessment before the completion of the work.

(*a*) The improvement for which the assessment in question was laid was made in the exercise of the power conferred upon the corporation by the act of 1813.

The same section of the act which authorizes the improvement, also provides for the making of a just and equitable estimate and assessment of the expense thereof among the owners and occupants of the property benefited. (2 *R. L.* 1813, *chap.* 86, *p.* 407, § 175; *Valentine's Laws, p.* 1190.)

The language of the act clearly indicates that the assessment is to precede the completion of the work, and such has been the judicial construction placed upon it. (*Elmendorf* agt. *Mayor,* 25 *Wend.* 696; *Doughty* agt. *Hope,* 3 *Denio,* 249.)

This construction is strengthened by the provisions of the

In the matter of James W. Beekman.

one hundred and seventy-sixth section of the act of 1813, which in substance declares, that if the sum expended in making the improvement exceeds the amount estimated and collected, a further assessment, equal to the amount of such excess shall be made; and in case the sum expended shall be less than that estimated and collected, the surplus shall be returned to the persons from whom it was collected, or to their legal representatives. (2 *R. L.* 1813, *chap.* 86, § 176; *Valentine's Laws, p.* 1192.)

This construction is also sustained by the language of the act of 1859, creating the board of assessors, and prescribing their duties. (*Laws of* 1859, § 15; *Valentine's Laws, p.* 1280, § 15.)

The act of 1824 still further strengthens the position taken, that the assessment should precede the completion of the work. This act originated in the doubt as to what work could be done at the expense of the corporation under the 270th section of the act of 1813. The act removes the doubt, but in its removal expressly provides that assessments for the expenses incurred are to be made as directed in and by the 175th section of the act of 1813 (*Laws* 1824, *chap.* 49, *p.* 39).

The fact that the ordinance does not provide for making an *estimate* and assessment of the expense, but only provides for an assessment, is immaterial. The duties of the assessors are prescribed and regulated by statute and not by ordinance. (*Laws* 1859, *chap.* 302, *p.* 678, § 15; 2 *R. L.* 1813, *chap.* 86, *p.* 407, § 175.)

Construing the 15th section of the act of 1859, in connection with the 175th section of the act of 1813, and there can be no doubt but that the assessment should precede the completion of the work.

II. The objection that the assessment is void, for the reason that only two of the assessors acted in its reparation and correction, cannot be sustained.

(*a*) The assessment list was first completed on the 10th day of October, 1863, and was sent to the board of revision on the 21st of December, 1863. On the 13th of January, 1864, the list was returned to the assessors for correction.

In the matter of James W. Beekman.

The corrections consisted of the addition of two items of expense amounting to fifteen hundred dollars—five hundred dollars for culverts, and one thousand dollars for surveyors' fees—these two amounts having been inadverdently omitted from the list as prepared October 10, 1863.

After the list was corrected, it was readvertised for objections for the time required by law. On March 4, 1864, the list as corrected was sent to the board of revision for confirmation, and was confirmed by that board on the 15th day of March, 1864.

In making the assessment as completed October 10, 1863, all three of the assessors acted. In the correction of the assessment only two of the assessors, Dooley and Oakley acted, McNeill having resigned on the 31st day of December, 1863.

Upon this state of facts it is insisted that the assessment is void, for the reason that only two of the assessors took part in the correction of the list.

This position is founded upon the rule that when an authority is conferred upon three or more officers, to be exercised for a public purpose, all the persons upon whom the authority is conferred must meet and consult.

This rule, however, has no application to the powers conferred upon the board of assessors as at present constituted (*Laws* 1859, *chap.* 302, *p.* 683, § 16).

By this section of the act of 1859, it is expressly provided that a majority of the "assessors shall make all estimates and assessments, give all notices," &c. ; or, in other words, the power relative to assessments, which under the act of 1813, was conferred upon the three assessors jointly, is by the act of 1859, conferred upon a majority.

The reason of the change effected by the act of 1859 is obvious, when it is remembered that under the act of 1813, a similar objection to the one now urged against this assessment was taken and sustained as valid, the act of 1813 not providing that a majority might make an assessment. (*Doughty* agt. *Hope*, 3 *Denio,* 594 ; *Affirmed,* 1 *Comst.* 79.)

This assessment was corrected in January, 1864, and two

In the matter of James W. Beekman.

of the assessors, Oakley and Dooley, acted in its correction, and it is, therefore, a valid assessment under the act of 1859, and the rule that all must meet and consult, is not applicable. Conceding the application of the rule, yet it is not without exception, but is subject to the reasonable modification that when all are notified or have an opportunity to act and decline to do so, yet the act of the majority is valid, and those declining to act are to be regarded as having dissented. (*Horton* agt. *Garrison*, 23 *Barb.* 176; *People* agt. *Walker*, 23 *Barb.* 304; *People* agt. *Batchelor*, 28 *Barb.* 310; *People* agt. *Batchelor*, 22 *Barb.* 128; *People ex rel. McSpedon* agt. *Supervisors of New York*, 18 *How.* 152.)

It is clear that McNeill would have had authority to act in the correction of the assessment had he been a member of the board at the time it was returned to the assessors. Jones, as successor of McNeill, was possessed of all the powers which McNeill would have had in case he had not resigned. The proofs show that Jones was cognizant of all the steps taken in the correction of the assessments (*Testimony of Allen, cross-examination*).

An opportunity, therefore, was afforded to the third assessor, to act had he felt so inclined, and the assessment therefore, falls within the exception to the genral rule, and is valid.

III. The charge for assessing was properly included in the assessment.

(*a*) It is clear that one of the items of expense which must attend every improvement of the character of the one for which this assessment was laid, is the expense of apportioning and assessing its cost. In this case the assessors have, under the solemnity of their oaths, fixed that amount, and in the absence of fraud, their decision is binding and conclusive. (*Miller's Case*, 12 *Abb.* 121; *Matter of Seventy-ninth street*, INGRAHAM, *J.*) In the case last cited this same objection was taken, and was overruled by Justice INGRAHAM.

IV. The objections that the charges for advertising and surveying are excessive, and that in correcting the list the assessors did not make a just and equitable apportionment of the

one thousand five hundred dollars added, are neither sustained by the proofs nor available to the petitioners.

(a) The amount charged for the estimated expenses of advertisement is five hundred dollars. The correctness of this charge is sought to be impeached by the testimony of the witness Allen, who swears that the average expense for advertising assessment lists would be between seventy-five and eighty dollars—certainly less than one hundred dollars. He then swears that the estimate of the expense of advertising this list before it came to the assessors, as certified to by the street commissioner, was one hundred and twenty-three dollars and seventy-five cents, and that the whole expense incurred by the assessors would not exceed seventy-five dollars, making an aggregate of two hundred and eight dollars and seventy-five cents, or more than double the average price, as sworn to by him, clearly showing that the average price furnished no criterion by which to judge of the necessary expense.

He also testifies that his estimate does not include the cost of advertising preliminary to the passage of the original ordinance. The greatest force that can be given to the testimony of this witness is, that in his opinion, the charge for advertising is excessive. The question therefore is, whether his judgment or that of the two assessors, the sworn officers of the law, skilled from long experience in the discharge of the duties of their office, in making estimates of this character, shall prevail.

As to the item of surveying, there is no evidence attacking its correctness. The street commissioner certified to three thousand and one dollars and fourteen cents.

This was for maps ordered by that department. Subsequently the assessors had need of two additional maps which they ordered, and which now form a part of the assessment list, and the cost of which makes up the remaining sum of the charge for surveying. Conceding that the amounts estimated as expenses of assessing, advertising and surveying are excessive, yet that would not make the assessment irregular, but would only convict the assessors of an error of

judgment, from which the petitioner could not suffer any damage, as the 176th section of the act of 1813, provides for the return of all the excess of the estimates over the real cost to the parties interested.

(b) These objections having never been presented to the assessors prior to the confirmation of the assessment, they are not now available to the petitioners. The act of 1841 furnishes an opportunity to all persons having objections to any assessment to present them to the chairman of the board of assessors, whose duty it is made to transmit them with the assessment to the persons authorized to confirm the same (*Laws* 1841, *p.* 48).

This provision of the act of 1841, is analogous to that of the act of 1813 (*Davis R. L. p.* 537, § 187), and under that act it has been held that affidavits and objections not presented to the commissioners, could not be read or heard in opposition to a motion to confirm their report. (*Harman street*, 16 *Johns.* 231; *Matter of Pearl street*, 19 *Wend.* 649; *John and Cherry streets*, 19 *Wend.* 657; *William and Anthony streets*, 19 *Wend.* 680; *Owners of ground* agt. *Mayor*, 15 *Wend.* 374, 377; *Lyon* agt. *City of Brooklyn*, 28 *Barb.* 609; *Washington Park, Brooklyn*, 1 *Sandf.* 283.)

The petitioners having failed to present objections to the assessment before its confirmation, are estopped from raising them now for the first time. (*Miller's Case*, 12 *Abb.* 121; *Keyser's Case*, 10 *Abb.* 481; *Babcock's Case*, 23 *How.* 118; *People* agt. *City of Rochester*, 21 *Barb.* 657; *Sandford* agt. *Mayor*, 33 *Barb.* 147.)

The objection to the assessment that the assessors in correcting the assessment did not distribute the sum of fifteen hundred dollars equitably, is not sustained by the proofs, nor is it subject to review here.

Allen swore that in correcting the list he acted under the directions of the two assessors, Oakley and Dooley. His opinion, therefore, that the distribution made of the fifteen hundred dollars was made without regard to the location or benefit of the property assessed, ought not to outweigh the sworn statement of the assessors that the assessment is just

and equitable, especially when this objection is taken for the first time after confirmation. The judgment of confirmation is conclusive upon questions such as this (*Miller's Case, supra*).

Treating the act of confirmation as a judgment of a tribunal of special and limited jurisdiction, as was done by Justice LEONARD in *Miller's Case*, and, therefore, conclusive upon parties and privies when jurisdiction is acquired and no fraud committed, it follows that the objections here taken cannot be sustained.

It would be quite as competent to impeach a judgment of the supreme court at special term, by the testimony of the clerk, that the presiding justice in rendering the judgment did not regard either the evidence in the case nor the principles of law governing it.

V. The application should be dismissed.

HENRY H. ANDERSON, *for respondent*.

PRELIMINARY.—The appeal should be dismissed. The order made by the justice in vacating is final, and not subject to review (*Matter of Dodd*, 27 *N. Y.* 629).

*First.*—An assessment cannot be laid before the work assessed for is actually done. The provision of section 175 of the act of 1813, authorizing the appointment of assessors to estimate the expense of a projected improvement, and the subsequent assessment of such estimated expense, was adapted to a different state of things from that existing at present in the city. It was only temporarily used, and the law authorizing such estimate has since been repealed by necessary implication. But it is unnecessary to determine that question in this case, for, even if the power exists, it is necessary to do certain things which have not been done, and to leave undone certain things which have been done.

(*a*) By section 175 of the act of 1813, (*Davies Laws, p.* 526), power was given to the Common Council to make improvements, and to cause estimates of the expense of conforming to such regulations to be made, and a just and equitable as-

In the matter of James W. Beekman.

sessment of such estimated expense to be subsequently made among the owners, &c., of lots. It is further provided that the mayor, aldermen and commonalty, shall appoint three skillful and competent persons to make every such estimate as well as to make the assessment. The action of the common council is as necessary to authorize an estimate as an assessment. The manner of laying an assessment is then designated particularly by section 175. After the money is collected the corporation may proceed to do the work. This provides for one class of cases. A second class is provided for by section 270. By this the mayor, aldermen and commonalty are authorized in all cases *where they may deem it necessary*, for the more speedy execution of the work, to have such work done at their own expense on account of the persons, respectively, upon whom the same may be assessed, &c. They are given authority to do the work and then to levy and collect the amount expended.

By the act of February 16, 1824, (*Davie's Laws p.* 659,) it is provided that assessments for any expense for local improvements, *with interest*, may be made as directed in and by section 175, and shall be a real incumbrance upon the houses and lots, which may be sold for any such assessment thereon, &c.

The provision for interest is noteworthy, showing the intention that the money should have been *expended*.

The mayor, aldermen and commonalty, deemed the work in question one which should be done at their own expense. As this brought the case under section 270, they did not appoint any persons to estimate the expense, nor authorize such estimate to be made, but authorized only an assessment of the expense when the same should actually be incurred. In this case the assessors have acted prematurely. There was no authority for making the assessment which was made. An assessment under such an ordinance as the one under which this work was done, for anything else than *the expense of conforming to the ordinance*, is *ultra vires* Such expense cannot be ascertained until the work is done.

As the amount assessed is only an estimated amount, de-

termined by no lawful authority, there is no pretence of law by which the property of the petitioner can be charged with an assessment therefor.

The assessment made was, on this ground properly vacated.

*Second.*—But even were an assessment authorized it has not been lawfully made.

1. Three assessors, McNeill, Oakley and Dooley, were appointed by the ordinance to make this assessment. December 21, 1863, the list was sent to the board of revision and correction. December 31, McNeill resigned. January 13, 1864, the board sent the list back to the two assessors, Oakley and Dooley, who increased nearly all the items in the assessment list without conference with the third assessor. This was an irregularity.

(a) The principle is too well settled to be now disturbed that where any three persons (not a court) are appointed to act judicially, upon a public matter, they must all confer, but a majority may decide.

This will be rigidly enforced, especially in such proceedings as tend to divest a man of the title to his property. The act, in authorizing the making of assessments by three assessors, or a majority of them, does not intend to change the rule of law, but is merely giving expression to the law as settled by adjudicated cases. (*Doughty* agt. *Hope*, 1 *Comst.* 82; *Ex parte Rodgers*, 7 *Cow.*, 526; *Lee* agt. *Parry*, 4 *Denio*, 125; *Sharp* agt. *Johnson*, 4 *Hill*, 99; *Powell* agt. *Tuttle*, 3 *Comst.* 396.)

*Third.*—The amounts for which the assessment was laid were known to the assessors to be incorrect.

1. The amount for advertising, $500, is shown by Allen's testimony to be double the correct amount.

2. The surveyor's fees were certified to by the street commissioner at $3,001.14. The assessors put in $6,683.17.

3. The salaries of the assessors and their clerks amounted in all to $7,000. This amount is raised by taxation, and the assessors occupy one of the public offices in the city hall. There are, therefore, no expenses for which an assessment

In the matter of James W. Beckman.

can be laid, nor was there anything to justify a charge for $3,357.05. In addition to this the assessors had already, during the year, assessed upwards of $10,000 for expenses of assessing. This assessment actually cost the corporation nothing; and a clear profit of $10,000 had already been made that year out of assessment business.

These facts were known to the assessors, and the assessment of these amounts must be regarded in law, if not a fraud, certainly an irregularity.

*Fourth.*—The law provides that the expense shall be assessed upon the owners, &c., in proportion to the amount their lots are benefited. This assessment was increased by the two assessors, and as finally made, was "not at all with reference to the location of, or benefit to property," "but only" with reference to finding blank spaces on the list to insert amounts. If a space was left for insertion of figures, the assessment was there made.

This can hardly be other than a fraud upon the assessed, and it is certainly a gross irregularity.

*Fifth.*—The order below should be affirmed.

*By the court,* LEONARD, J. This is an appeal on the part of the city from an order vacating an assessment in proceedings taken under the act of 1858.

The petitioner objects that the assessment has been prematurely imposed. The ordinance, authorizing the improvement, directs the work to be done at the expense of the city, for its more speedy execution. The work was not completed when the evidence was taken in the said proceeding, in August, 1864. Although the assessment was reported to the board of revision, &c., in January, and confirmed by that board in March, 1864.

It is indicated by the terms of the ordinance that the improvement was to be made by the city, under section 270 of the act of April 9, 1813. (*Vide Davie's Laws p* 567.)

It is provided by an act passed in 1824, chap. 49, that the authority given by section 270, of the act of 1813, shall apply to all the ordinances of the city for work to be done, and that the assessment therefor shall be made pursuant to sec-

tion 175 of the same act. Referring to section 175 it will be seen that it contains no direction that the assessment shall be made before or after the work has been performed.

If the assessment precedes the performance of the work, it is entirely clear that an estimate of the expense must be first made: but after the work has been completed, and the expense has been paid or incurred, or definitely ascertained, the estimate is superfluous. (*Wetmore* agt. *Campbell*, 2 *Sandf. S. C. R.* 341.)

The same case was referred to and affirmed by the court of appeals, in *Manice* agt. *The Mayor*, *&c. of New York*, (4 *Seld. R.* 130). In the present case all the work had been contracted for, but a portion of it only had been completed when the assessment was made.

It thus appears that an estimate was necessary in order to ascertain the amount to be assessed. The assessors were sworn to make a just estimate and assessment, but the ordinance omits any direction for an estimate. The ordinance was adopted in November, 1856, and the assessors were named therein, the common council then being authorized to make the appointment. These assessors proceeded to make an estimate and assessment in October, 1863, which they reported in December following to the board of revision, &c., who are charged now with the duty of revising and confirming assessments. I think it not necessary that the duties to be performed by the assessors should be named in the ordinance. The law has prescribed the duty which they are to perform.

The assessors being appointed by the ordinance, were required to proceed and perform the duty which the law imposed upon them as such officers.

The objection that the assessment could not be made before the completion of the work, and that the assessors were not authorized to make an estimate upon which to found their assessment is not well taken.

Another objection is urged by the petitioners, arising out of subsequent proceedings, in respect to this assessment.

One of the assessors appointed by the ordinance in 1856,

resigned on the 31st of December, 1863, after the assessment list had been reported to the board of revision, &c. On the 13th of January, following, that board returned the list to the assessors for correction. The two remaining assessors appointed by the said ordinance of 1856, acted, in making the corrections, without the concurrence of a third assessor, who had been appointed in the place of the one who had resigned, by the board of commissioners of taxes, &c., by the authority of the act which created that board, passed in 1859. It appears from the evidence that the newly appointed assessor was not invited to act in making the corrections of the assessment list because he had not been named in the ordinance.

The report of the assessors declares that they derive their appointment from the common council under the said ordinance. It has not been insisted that the two assessors, who were appointed by the said ordinance, had not authority to act after the act of 1859, making it the duty of the commissioners of taxes, &c., to appoint assessors. Nor is it claimed that they derive any authority to make an estimate or assessment by virtue of any appointment from that board.

The act of 1859, creating the said board, contains a provision authorizing a majority of the board of assessors to be appointed under that act, to make estimates and assessments. But the provisions of that act are not made applicable to the assessors theretofore existing. (*Sess. Laws*, 1859, *chap*. 302, § 16.)

The board of assessors consisted of three members, two appointed by the ordinance, and one by the board of commissioners of taxes, &c., but the two former only acted. It cannot be assumed that the other was notified, but neglected to meet with the other two because the evidence is, that it was thought best that he should not act, as he was not named in the ordinance. The statutory rule, as well as the rule of the common law, applicable before the act of 1859, requires all the members to meet and consult, although a majority may decide, unless special provision is otherwise made. (2 *R. S.* 555; *Doughty* agt. *Hope.* 3 *Denio*, 594.)

That rule is the one to which the assessors in question were required to conform. They disregarded it. This was a legal irregularity, which rendered their action, after December 31, 1863, invalid. Under the act of 1859, if that rule was applicable here, it would be illegal to exclude one assessor from acting intentionally. It might be lawful for two to act if one neglected, or was unable to perform duty as an assessor.

The order appealed from must, therefore, be affirmed, with costs.