HON. JAMES BARRETT,
HON. ASAHEL PECK,*
HON. WILLIAM C. WILSON,
HON. HOYT H. WHEELER,
} ASSISTANT JUDGES.

---

THE TOWN OF DANVILLE *v*. MONTPELIER & ST. JOHNSBURY RAILROAD COMPANY, JAMES CRANE, D. O. GOOKIN, AND JAMES B. MATTOCKS.

[IN CHANCERY.]

*Railroad. Agency. Ratification. Subscription. Towns. Commissioners. Injunction.*

Commissioners appointed by a town to make a subscription of railroad stock under an act of the Legislature providing the manner in which the town may give its assent to such subscription, are the agents of the town and of no other party in that business, and

---

*Each present a part of the term.

are responsible to no other party for the manner in which it is executed, even though they incorporate conditions in their contract of subscription beyond what was required in the instrument of assent by which they received their appointment and authority.

The insertion of such a condition, as in this case, was an unauthorized act on the part of the commissioners, but was not a void act, unless the town chose to avoid it, and without repudiation, an adoption and ratification would be presumed as to the town.

The town never having repudiated the conditions, no other party had authority to repudiate them, and the subscription stood as the subscription of the town, upon the terms and conditions contained therein, and the Railroad Company could only accept or reject it as it was made.

Having made the contract of subscription and delivered it to the President of the Railroad Company, the commissioners exhausted their power and had no authority to make another subscription upon different terms.

The authority to the three commissioners appointed was joint to them all, and had to be jointly executed, not by a majority, as in case of a board of public officers, a majority of whom may act for the whole under the statute of this State.

Therefore a second subscription, executed by two only of said commissioners, varying from the first in terms, was of no effect as a subscription for the town, and the first one is the only one remaining in force.

As the case shows that the selectmen and treasurer of the town intend to deliver the bonds of the town to the Railroad Company in accordance with the second subscription and in violation of the conditions of the first, which were important, it was *held* that an injunction was properly granted restraining said officers from so doing.

BILL IN CHANCERY. At the session of the Legislature of the State of Vermont in October, 1866, a charter was granted to certain persons, therein named, to construct a railroad from the village of St. Johnsbury to the village of Montpelier in this State. An act of Legislature was also passed at the extra session in 1867 authorizing and enabling the town of Danville, through which it was supposed said railroad would be established and run, together with certain other towns, to aid in the construction of said rail-. road, and therein providing for the form and manner of proceeding in pledging the aid of such towns to the construction of such railroad. An instrument of assent for the town of Danville was prepared, under said act of the Legislature, to subscribe for stock in said corporation, to the amount of one thousand shares.

The following is a copy of a portion of said instrument:

We, the undersigned, inhabitants and tax-payers of the town of Danville upon the grand list now in force, do hereby give our assent that said town of Danville may aid in the construction of the Montpelier & St. Johnsbury Railroad, in the manner following:

The commissioners hereinafter named are to subscribe for ten hundred shares of the stock of said railroad company, for and in the name of said town, to be paid for by the notes or bonds of

said town equal in amount to the par value of said shares of stock ; said notes or bonds to be issued in sums of not less than fifty dollars, nor more than one thousand dollars each, and to bear interest at a rate not exceeding seven per cent., specified in semi-annual coupons thereto attached, and to be payable after five years and within twenty years from this date, and to be issued under and according to an act of the legislature, approved March 28th, 1867. And said assent and subscription are made subject to the following fundamental condition : If said company, by sub-scriptions to or sales of the stock of such company, fail to raise sufficient funds to complete the road of such company, and it shall be necessary for such company to raise money by a mortgage of its road to complete the same, the said town of Danville is to receive, in lieu of the stock of such company, hereby authorized to be subscribed and paid for as aforesaid, not to exceed in amount one half of such subscription, such proportion of the mortgage notes or bonds issued by such company for the completion of such road, as said ten hundred shares of stock bear to the whole paid up stock of such company.

And we do hereby name and constitute William J. Stanton, William B. Palmer and Benjamin Greenbanks, resident citizens and tax-payers of the town of Danville, to be commissioners to make and execute, in the name of and behalf of said town, the above-named contract and subscription, and to do all other things required of such commissioners by said act.

In testimony whereof, we have each hereunto set our hands, the date of signing, and the amount of our several grand lists.

[Then follow the names of the subscribers, &c.]

The commissioners were sworn to a faithful performance of the duties of their office as such, and certified that a majority of those having a grand list at that time in said town, and representing a majority in amount of the grand list, signed said assent. A railroad company was duly organized under said charter, under the name of Montpelier and St. Johnsbury Railroad Company, in February, 1867, and Horace Fairbanks was chosen president; and the said commissioners, by a written subscription by them signed as commissioners under said act of the legislature, &c., subscribed for said stock for the town of Danville, the instrument of subscription being as follows :

The town of Danville, in the county of Caledonia, by the un-dersigned commissioners, duly appointed and authorized for that

purpose, do hereby subscribe for, and agree to take, ten hundred shares of the capital stock of the Montpelier & St. Johnsbury Railroad Company, of one hundred dollars each.

The above subscription is made upon the following conditions, to wit : Said stock is to be paid for by the notes or bonds of said town of Danville, in sums not less than fifty dollars nor more than one thousand dollars each, to be paid in not less than five years nor more than twenty years from this date, with interest thereon at the rate of six per cent. per annum, payable semi-annually, to be specified in coupons thereto attached.

Said notes or bonds are not to be delivered until there shall be raised by subscription of such stock at least ten thousand dollars per mile from St. Johnsbury to Montpelier, or to such other point on the Vermont Central or Vermont and Canada Railroad as may be fixed upon for the western terminus and connection of said road ; and the president and directors of said Montpelier & St. Johnsbury Railroad Company give to the town of Danville a bond that said railroad shall be built through North Danville village, so called, thence south of the village called Danville Green, thence to West Danville, so called, and have a station at each of said villages, with a depot at each of said stations, suitable for the business of the place ; and that all interest accruing on said town notes or bonds shall be paid by said Montpelier & St. Johnsbury Railroad Company while said road is being built, and until its completion, so as to make a connection from some point on the Vermont Central or Vermont and Canada Railroad, and also on the east end of the line with the city of Portland.

And said town notes or bonds are to be delivered to the directors of said company only so fast as assessments shall be called for and paid upon all the stock of said road, to defray the expenses of construction.

And if said railroad company shall fail to raise sufficient funds to complete their road by subscription for stock, and shall find it necessary, in order to complete said road, to raise money by a mortgage of its road, then said town of Danville is to receive, in lieu of the stock above subscribed for, such a proportion of the mortgage bonds of such company so issued, as ten hundred shares of stock bears to the whole stock of said company, but not to exceed one half the amount of said subscription. .

Dated at Danville, this eleventh day of Oct., A. D. 1867.

WM. J. STANTON,
WM. B. PALMER,
BENJ. GREENBANKS,

{ Commissioners, duly authorized by a written instrument of assent, signed by a majority, both in number and the amounts of tax-payers, of said town of Danville, duly recorded, and hereby referred to,

This subscription was put into the hands of Horace Fairbanks, as president of said company, soon after its date, and the evidence tended to show that when he came to read it, he objected to the conditions therein, and did not submit it to the board of directors, but made efforts to get a subscription without conditions, or except such as said " assent " called for ; that in November, 1869, two of the commissioners made another subscription, varying the conditions from those of the first subscription, especially in respect to the western *terminus* and the route through Danville, and in respect to the bond that the road should be built through North Danville village, that condition being stricken out. One of said commissioners, William J. Stanton, refused to concur in the change of the subscription, and did not sign the second paper.

The president, said Fairbanks, continued to hold said first contract of subscription, but the evidence on the part of the defendants tended to show that neither the president nor the company regarded it as accepted by the company as a subscription, and did not accept it as such ; and after being executed and handed to Mr. Fairbanks as aforesaid, a change was made therein by all the commissioners acting jointly, as follows : in the paper as first handed to Mr. Fairbanks, it was provided that said bonds should not be delivered until there should be raised, by subscription of such stock, at least twelve thousand five hundred dollars per mile, &c. This was changed to ten thousand dollars, as aforesaid. The orator's evidence tended to show an acceptance by the railroad company of the first subscription.

On the 13th day of March, 1869, it was voted in town meeting to dismiss an article in the warning, to see if the town would vote to modify or vary the terms of its subscription to aid in the construction of said road, by taking more stock or less bonds. Again, on the 15th day of December, 1869, said town in town meeting voted that the town agent be instructed to get out an injunction forthwith to restrain the town officers from issuing town bonds to said railroad company. These were the only acts of the town, in town meeting, in respect to said railroad, that were put into the case. Previous to said last meeting, the Danville town bonds, to be given in payment of said subscription, had been pre-

pared and signed by the selectmen, and put into the town treasurer's hands for his signature; and the clerk of said railroad company had given notice that an assessment made on said town was needed at once by the company; and the town treasurer, said James B. Mattocks, and two selectmen, said Daniel O. Gookin and James Crane, defendants in this cause, were willing, and intended, to pay them to the railroad company.

This bill of complaint was brought January 1st, 1870, praying for an injunction to restrain said town officers from issuing or delivering to said railroad company any notes or bonds in the name. of, or purporting to bind, the town of Danville for the purpose of paying for the stock in said corporation. The bill set out the foregoing facts and many others. Answers were filed and traversed, and a vast amount of testimony taken. The orators claimed to be entitled to an injunction on several grounds, and various questions were discussed at length in the argument, but the disposition of the case by the court, as appears in the opinion, renders the foregoing statement of facts, taken in connection with the facts disclosed in the course of the opinion, sufficient for an apprehension of the points decided.

A preliminary injunction was granted, in accordance with the prayer of the bill, at the time the bill was brought; and the pleadings and testimony being closed, the cause was heard on bill, answers, traverse, and proofs, at the June term, 1870, PECK, Chancellor, when it was ordered that the orator have a decree substantially according to the prayer of the bill, and that the preliminary injunction be made perpetual. From this decree the defendant railroad company appealed.

*Ross & Smith*, for the defendants, maintained that the commissioners were appointed to write out a subscription, in accordance with the contract embodied in the instrument of assent, and sign it on behalf of the town, and deliver the same to the railroad company; that they had no power to add to or take from the contract assented to by the tax-payers; that the condition attempting to define the location of the road through the town, and the location and establishment of stations, is outside the instrument of assent, and beyond the power conferred upon the commissioners.

It cannot be held that this was only carrying out the wishes of the tax-payers in Danville and therefore they may be presumed to consent to it. The attempted execution of the power in the first subscription was no execution of the power, and the authority still inhered in the commissioners to make a subscription in accordance with the instrument of assent. The first instrument of subscription was never accepted by the railroad company, nor by the town. If the execution of that paper should be held to be a full execution of the power vested in the commissioners, by the instrument of assent, in equity, it binds the railroad company only so far as it is in conformity with the instrument of assent, and the rest may be rejected as excess, the excess being clearly and definitely separable from the part authorized. Story on Agency, §§ 166, and 173 ; 1 Parsons on Con., 69, and 70, note (u,) or 5th Ed., 81, and 82, note (L,) and cases cited by all said authorities.

[Other points of argument are omitted as they are not discussed or decided in the opinion.]

*Timothy P. Redfield* and *T. Bartlett,* for the orator, maintained that the conditions, in the first " assent," were *conditions precedent* and the railroad company have not complied with them ; that when said subscription was made and accepted, as it was, it became a contract executed, and the commissioners become *functus officio* ; that they were appointed to do one special act, and when that act was done their authority was at an end ; that the three commissioners could only act jointly, and two had no authority to act. Acts of 1867, page 345, sec. 7 ; *Hodges, Ex'r.,* v. *Thatcher et al,* 23 Vt., 455 ; *Newell* v. *Ex'r. of Keith,* 11 Vt., 214 ; that the commissioners were the agents of the town, " to make the contract of purchase or subscription " and they could require any condition or security for the benefit of the town, not in contravention of their authority. If the first subscription is invalid, then no subscription has been made, and there is no duty on the officers of the town to issue bonds, especially against the will of the town.

The opinion of the court was delivered by

WHEELER, J. The instrument of assent, signed and acknowledged by a majority of the tax-payers of Danville who represented

a majority of the grand list of that town, named and constituted
William J. Stanton, William B. Palmer, and Benjamin Green-
banks to be commissioners to make and execute, in the name
and in behalf of that town, the contract and subscription which
these tax payers had assented to, and to do all other things re-
quired of such commissioners by the enabling act. That act,
Laws of 1867, page 346, provided that when such commissioners
should have made and executed such subscription in pursuance of
the terms of the assent and the provisions of that act, the same
should be binding upon the town. The enabling act and the in-
strument of assent each contemplated that the town itself should
subscribe for, take and pay for the stock of the railroad company.
To do that, a contract between the town and the railroad company
was necessary, and that contract could only be made by agents to
act for each contracting party, for each party had only a corpo-
rate existence and could do nothing except through the agency of
natural persons.

This contract was one that neither party could compel the other
to enter into ; however much the town might desire the stock of
the company, it could not subscribe for and take it against the will
of the company, and however much the company might wish to
have the town take and pay for the stock, it could only dispose of
the stock to, and acquire the pay for it of, the town by contract
with the town. These commissioners were to act as agents for the
town in making the contract, and they were agents for no other
party than the town in that business. They had no authority from
any other party, and were responsible to no other party for the
manner in which it was executed. Under that authority the com-
missioners made a written contract of subscription for one thou-
sand shares of the stock of the company of one hundred dollars
each, the subscription payable in bonds of the town of specified
amounts, rate of interest, and times of payment, upon condition,
among others, that the bonds should not be delivered until the
president and directors of the railroad company should give to
the town a bond that the railroad should be built through North
Danville village, thence south of Danville Green, and thence to
West Danville, and have a station, with a depot suitable for the

business, at each place. This condition was not required by the instrument of assent, and the commissioners were as well authorized to make the contract of subscription without it as with it. They saw fit not to make the subscription without the condition, and insisted upon having it inserted in the contract. In doing this they acted wholly as agents of the town and not at all as the agents of the railroad company, and they were responsible to the town only for what they did. The commissioners delivered the written contract to the president of the railroad company, intending thereby to make a subscription for the one thousand shares of stock upon the conditions contained in the written contract of subscription for and in behalf of the town of Danville. The railroad company was under no obligation to accept this subscription upon these conditions and might have rejected it altogether; but of itself alone the railroad company could only either reject it or accept it upon the very terms upon which it was offered. The town had a right to require its agents to make the subscription without any conditions, except those set forth in the instrument of assent, and probably might, if it had seen fit, have compelled the commissioners to make the subscription without the condition as to the location of the road and the stations and depots in the town of Danville. But the railroad company could not have compelled the commissioners to do so. The company had the right to control its own agents in their conduct about making the contract of subscription, but it had no right to dictate in any respect the action of the agents of the other contracting party.

The agents of the town inserted that condition in the contract, and insisted that the subscription should be made only upon that condition; the railroad company was not satisfied with the subscription upon that condition, and tried to get it made without the condition, but did not absolutely reject it. The officers of the company retained the written contract and endeavored to get the conditions changed or waived so that the subscription should stand more in accordance with the wishes of the company than it was with the conditions in; and the condition requiring twelve thousand five hundred dollars in stock per mile of road to be subscribed before the bonds of the town should be delivered, was

changed to ten thousand dollars per mile, at the request of the railroad company; but the condition as to the location of the road through and the stations and depots in Danville was retained and insisted upon by those acting in behalf of Danville, and the contract stood as the subscription of the town of Danville for the one thousand shares of stock with that condition as a part of the contract of subscription. Although none of the officers of the railroad company at any time expressly accepted this subscription for the company, their conduct in relation to it was such that the inhabitants and officers of the town were given warrantably to understand that the company did accept it as it then stood, intending however to procure the town to change or waive the conditions if found necessary to enable the company to avail itself of the subscription. The insertion of the condition in the contract of subscription was an unauthorized act on the part of the commissioners, but it was not a void act, unless the town of Danville, for which they acted, chose to avoid it. The town had a right to, and could adopt and ratify it, and when adopted and ratified, it would be as binding as if authority to insert it had been given before it was inserted. There are cases, no doubt, where the act of an agent or attorney may be void as to part done in excess of the authority, and valid as to the residue done within the authority. Co. Litt., 358 a., Story on Agency, § 166, 1 Parsons on Contracts, 81 and note. But these cases have arisen mostly, if not wholly, in relation to the execution of powers for the sale and conveyance or purchase of real estate, where the agent or attorney had included some parcel of real estate about which he had no authority with another parcel about which he had authority; or had made or taken conveyance of one species of estate, when he had authority only to make or take another species greater or less. And there may be good reason for such a division of an act of an attorney, done about the conveyance of real estate and resting upon the artificial rules in relation to the creation and conveyance of the different classes of estates in real property, without allowing such a division of an act done about the making of a personal contract. But, however that may be, no case has been shown that holds that any party, other than the one for whom the

attorney acted, can, in his own behalf, claim a part of an act of the attorney to be void and another part valid on account. of a want of authority for the whole.  No express act on the part of the town was necessary to ratify the act of the commissioners in the insertion of the condition ; its silence in regard to the condition for so long a time was sufficient to warrant all others in assuming that the act was assented to, and, as to the town itself, no act of confirmation could be necessary, for, without repudiation, an adoption and ratification would be presumed.   Story, on Agency, § 255.  The town of Danville never repudiated the act of the commissioners in inserting any of the conditions in the contract of subscription.  The doings of the commissioners were suffered to stand as the act of the town in relation to that matter. No other party had any authority to repudiate these conditions, and the subscription stood as the subscription of Danville upon the terms and conditions contained in the contract of subscription. It was the subscription of Danville, and no one not having authority from that town for that purpose could vary the contract.   The commissioners had authority only to make and execute the contract and subscription in the name of and in behalf of the town. When they had made the contract and subscription they did make, and had delivered it to the president of the company, for the company, and it had been received and treated as it was by the officers of the company, they had made and executed the contract and subscription they were authorized to make and execute. Their acts in doing it were the acts of the town.   The contract and subscription were the contract and subscription of the town, and they had no further authority in the matter.   The railroad company was not satisfied with the subscription as it was left by the three commissioners, and the officers of the company endeavored to get it changed so as to leave out the condition as to the location of the road, stations and depots in Danville ; or, what was the same thing, to get a new contract of subscription without such a condition in it.  Two of the commissioners were willing to make a new contract of subscription without that condition in it, the other commissioner was not, and declined to act in any way to change the subscription, or to make a new one to do away with

that condition. The two commissioners, who were willing to do so, made a new contract of subscription without the condition in it, and delivered it to the railroad company. The three commissioners had once executed their authority as agents of the town to make the subscription, and the subscription they had made belonged to the town for which they had made it. They had exhausted their powers and had no authority left in them by virtue of which to make another subscription. Therefore the three commissioners, all together, could not have made a new subscription upon different terms from those upon which the first one had been made, and in that way have deprived the town of the first subscription, and bound it to the new one. But if this were not so, the authority to the three commissioners was joint to them all. Although the town of Danville for which they were appointed to act was a public corporation, and the ultimate object for which all this business was to be done was the building of a railroad, which was in some sense a public work, still the act they were authorized to perform was not to be done in the execution of a public duty, imposed upon them as public officers, but it was a private act, which they, as private citizens, had been appointed to do. They did not derive authority from any position they held as officers ; but only from their private appointment. The common law always required such joint authority to be jointly executed. Co. Litt., 181, b ; 2 Kent Com., 633 ; Story on Agency, § 42 ; *Hodges* v. *Thacher*, 23 Vt., 455. The statute giving a majority of a board of public officers authority to act for the whole, Gen. Stat., 53, § 2, is not applicable to a case like this. That statute in terms is confined to public officers and has no reference to the acts of private agents. For these reasons the second subscription was of no effect as a subscription for the town of Danville, and the first one is the only subscription remaining in force. The town of Danville insists upon standing upon that subscription upon the very terms and conditions upon which it was made, if any subscription at all is to stand as its subscription. The subscription having been made for the town upon these conditions, the town has the right to insist upon the conditions, and the railroad company has no right to repudiate them.

The bill alleges, and the answers admit, that the selectmen and treasurer of the town, who are made defendants in the bill, are willing and intend to deliver the bonds of the town to the railroad company in accordance with the second subscription, and in violation of the condition in the first one, that the bonds should not be delivered until the president and directors of the company should give a bond that the railroad should be built to North Danville village, thence south of Danville Green to West Danville, with stations and depots suitable for the business at each village, unless restrained by the court of chancery. This condition is an important one, and the railroad company has no right to the bonds of the town, and the selectmen of the town have no right to deliver them to the railroad company, without its performance. Should they be delivered the orator could probably defend against them at law in the hands of the railroad company ; but the company, in its answer, says that it intends to negotiate them, if delivered, and in the hands of innocent endorsees the town might, and probably would, be embarrassed in making defence on account of the non-performance of this condition. This danger is sufficient to warrant the interference of the court of chancery, to prevent the delivery of the bonds to the company. The members of the court, who have heard this cause, all concur in the decision of the case upon this ground, and as that is sufficient to dispose of the case, no opinion whatever is expressed upon any other question involved in the discussion of the case at bar.

The decree of the court of chancery is affirmed, but without prejudice to any right which any party might otherwise have to enforce the first contract of subscription upon compliance with its terms by the railroad company.