## THE NEW YORK LIFE INSURANCE AND TRUST COMPANY *vs.* STAATS and others.

The duties of commissioners under the act authorizing the loan of the United States deposit fund, (*Laws of* 1837, *p.* 121,) except when otherwise provided, as in the 23d section of the act, cannot be discharged by one of the commissioners alone. Both must be present, concurring in the act.

Accordingly *held*, that a loan, made by one of the commissioners to himself, without the concurrence of his colleague, was unauthorized and void.

*It seems,* that a commissioner under that act cannot legally become a borrower from the commissioners; the nature of his duties, upon the making of an application for a loan, being incompatible with his being himself a borrower.

Where S., a loan commissioner, on receiving money upon a mortgage executed by another person, retained the same, in his hands, without the assent of his colleague, V. D., and executed a mortgage to secure the payment of the amount, upon premises already incumbered beyond their value, which mort-

gage was not recorded in the proper book for that purpose, kept by the loan commissioners, but in a book containing mortgages executed eight years before, and no entry of the transaction was made in the minutes of the commissioners, and there was no evidence that V. D., the other commissioner, was ever consulted in respect to the loan of the money to S. or assented to it, or even knew of the affair; *it was held* that the transaction was not a loan authorized by law; and that S. did not become a borrower, within the spirit .and meaning of the act.

*Held, also,* that as between the mortgagor and the mortgagees the mortgage was a valid lien; the mortgagor being estopped from denying the validity of the transaction. But that, as against subsequent incumbrancers, who were not chargeable with notice of the lien, the mortgage was void, for the reason that it had neither been executed in such a manner as to make it a valid mortgage under the provisions of the loan act, nor recorded as an ordinary mortgage.

THIS was a suit for the foreclosure of a mortgage. The mortgaged premises consisted of two lots in the city of Albany, extending from Broadway to Church street, upon which were situated the Fort Orange Hotel and other buildings. On the 26th of February, 1834, the premises were mortgaged by Simeon De Witt, who was then the owner thereof, to Abraham Varick and John V. B. Varick, executors, &c., to secure the payment of $15,000, with interest. This mortgage, with the bond accompanying the same, was assigned to the plaintiffs, on the 11th of September, 1849. The plaintiffs claimed that there was due upon this bond and mortgage the sum of $6000, with interest from the first day of May, 1849. On the 25th day of July, 1849, the defendant, Barent P. Staats, who had then become the owner of the mortgaged premises, executed, with his wife, a mortgage upon the same premises to the plaintiffs, to secure the payment of $10,000. Out of the money loaned by the plaintiffs upon the last mentioned mortgage, they paid the amount due upon the first mentioned mortgage; and with the consent of Staats, the mortgagor, took an assignment thereof, as collateral security for the payment of the mortgage for $10,000. On the 30th of November, 1842, the same premises were mortgaged by Staats to the Albany City Bank, to secure the sum of $15,000. Of the amount secured by this mortgage, there remained unpaid one note for $1870.60, with

interest from the 7th of July, 1853 ; one for $610.70, with interest from the 26th of February, 1854, and another for $3768.99, with interest from the 24th of March, 1854. On the 24th of July, 1849, the Albany City Bank, by an instrument duly executed for that purpose, agreed with the plaintiffs, that their mortgage for $10,000 should constitute and be a prior lien to that of the Albany City Bank, and that the latter mortgage should be deemed an incumbrance subsequent and subject to the mortgage of the plaintiffs. It also appeared from the book of mortgages to the commissioners for loaning the United States deposit fund for the city and county of Albany, that a mortgage upon the same premises had been executed by Staats to the commissioners, bearing date the 5th day of August, 1845, to secure the payment of $5000, with interest. The interest was indorsed upon this mortgage as having been paid up to the first Tuesday of October, 1853. On referring to the book of mortgages to the commissioners, it appeared that this mortgage was numbered 72 ; that the next preceding mortgage, being number 71, bears date the 8th day of June, 1837, and the next succeeding mortgage, being number 73, also bears date the same day. It also appeared that the name of Samuel Martin had originally been inserted in the mortgage, and that subsequently that name had been erased, and that of Barent P. Staats inserted. On referring to the book of minutes kept by the commissioners as required by law, it appeared that the loan for which Samuel Martin had applied had been rejected, on the ground that the property which he proposed to mortgage was unimproved. At the time of the date of the mortgage, and for several years afterwards, Staats was one of the commissioners of loans. The other commissioner was Lawrence Van Dusen, now deceased. The book of minutes contains no entry of a loan to Staats. In the index of the names of mortgagors, the name of Jeremiah Smith, whose mortgage was number 41, had been erased, and the name of Barent P. Staats inserted in its place. On referring to mortgage number 92, in the book of mortgages, it appeared to have been a mortgage executed by Erastus Corning to secure

N. Y. Life Ins. and Trust Co. *v.* Staats.

the payment of $5000, and that, on the 5th of August, 1845, it had been paid in full to Staats. No entry of this payment appears in the book of minutes, nor was it mentioned in the report of the commissioners to the comptroller. The indorsements of the payment of interest upon the mortgage for the years 1845, 1846 and 1847, was proved to be in the handwriting of Staats. Dr. Staats himself being examined as a witness, stated that, having the money in his hands as one of the commissioners, he filled out and executed the mortgage at the time of its date; that he thought he had consulted with his colleague, but of this he could not be certain, nor would he be certain that his colleague knew of the loan, although he thought he did; that he, Staats, had the custody of the book of minutes, and generally transacted the business of the commissioners.

The plaintiffs insisted that they had no legal notice of the mortgage by Staats to the commissioners when they made their loan to Staats, and that, as against them, the mortgage was fraudulent and void.

*W. Betts*, for the plaintiffs.

*J. H. Reynolds*, for the Albany City Bank.

*J. K. Porter* and *W. Barnes*, for the commissioners.

HARRIS, J.  The real question upon which the rights of the parties to this litigation must depend is, whether Dr. Staats, at the time of the execution of the mortgage to the commissioners, became a borrower of the money he had received upon the Corning mortgage, or is to be regarded as a defaulter to that amount. It was a violation of duty to receive the money at all. The 12th section of the loan act (*Sess. Laws of* 1837, *p.* 124) declares that "no borrower shall be permitted to pay any part of the principal moneys loaned on any day other than the first Tuesday of October in any year." Having received the money, the 28th section of the act made it the duty of

the commissioners, at the end of their annual meeting, to loan it out, in the same manner, and upon the like security, as the original loans were made. In making such loan, they were required to be satisfied that the borrower had a title in fee to the lands proposed to be mortgaged, and that the same were free and clear of all incumbrances, and also that such lands, exclusive of the buildings thereon, were worth double the amount of the proposed loan. For this purpose, the commissioners were required either to view the lands or to make due inquiry respecting the value thereof. They were also required to examine the title, and to administer an oath to the applicant for the loan, the form of which is prescribed in the 25th section of the act. In addition to these examinations, the commissioners were authorized, by the 10th section, if they should deem it necessary, " to require the borrower to satisfy them by proper evidence, that he possessed an estate in fee in such lands, free and clear of all incumbrances."

All these provisions contemplate the presence and action of both commissioners. The act requires that the duties shall be performed by the commissioners "respectively." The term is inapt, but it cannot be doubted that by it the legislature intended that the duties referred to should be performed by the commissioners together, acting as a board. Applications for loans are to be made to them, and not to one of them individually. They are together to decide whether they will accept a mortgage. They are together to judge of the sufficiency of title. They are both to view the lands, or otherwise to be satisfied of their value. Both are to determine whether the evidence that the lands are free from incumbrance is satisfactory, or whether further evidence shall be required. In short, except when otherwise provided in the act, as in the 23d section, the duties of the commissioners cannot be discharged by one alone. Both must be present, concurring in the act. This principle has been established by the court of appeals, in *Powell* v. *Tuttle*, (3 *Comst.* 396.)

I am inclined to think, too, that a commissioner cannot himself legally become a borrower from the commissioners. The

nature of his duties, upon application being made for a loan, is incompatible with his being himself a borrower. He is required, in the exercise of his official judgment, to determine whether the loan shall be made, and for that purpose is called upon to decide whether the property to be mortgaged is of sufficient value to answer the requirements of the act, and also whether the evidence of title is satisfactory. It is for him to examine the applicant upon oath in respect to incumbrances, and then to determine whether further evidence on the subject shall be required. How can these and similar duties with which the commissioner is charged, be performed when he himself proposes to become the borrower? · I am satisfied that it never was intended by the legislature, that the commissioners should themselves become borrowers of the fund committed to their charge. It is contrary to the spirit, and inconsistent with the provisions, of the act. It is a cardinal maxim of the law, that no man can be a judge in his own cause. It is declared by statute that no judge can sit, as such, in any cause in which he is interested. The case of a commissioner, when he himself proposes to become a borrower, is clearly within the policy of the law which will not allow a man to give judgment in his own cause. (*See Oakley* v. *Aspinwall*, 4 *Comst.* 514.) He must decide upon the sufficiency of the security, involving the value of his own property, the validity of his own title, and the question of liens and incumbrances. The impolicy of allowing a commissioner to decide such questions, when he himself is to be the borrower, needs no stronger illustration than this case presents. Assuming that the title of Dr. Staats was valid, and that the property mortgaged was worth double the amount of the mortgage, exclusive of buildings, yet the records of mortgages showed that, at the time the alleged loan was made, the property was incumbered to an amount greatly exceeding its conceded value. It is not to be believed that had the loan been applied for by any other person, such security would have been received.

But if it be conceded that the commissioners may make a loan to one of themselves, still I think the transaction in ques-

tion did not amount to such a loan. No application was made to the commissioners. They never determined that the loan should be made. The most that can be said is, that Van Dusen, the other commissioner, was informed of what had been done by Dr. Staats, or what he was about to do, and that he expressed no dissent. And even in respect to this, there seems to be some uncertainty. Dr. Staats, when examined, was far from being sure that he had ever even spoken to his colleague on the subject of the loan. The fact that no entry of the transaction was made in the minutes, as well as the circumstances connected with the execution of the mortgage itself, are calculated to give strength to the doubt whether Van Dusen even knew of the transaction at all. I am constrained, therefore, to regard the mortgage, not as a loan authorized by law, but as an attempt to secure the state for money which the mortgagor had received in his official capacity as a commissioner, and which he illegally retained in his own hands. He never became a borrower of the money within the spirit and meaning of the act, and, notwithstanding the mortgage, I can regard him in no other light than as a defaulter.

There can be no doubt, I suppose, but that Dr. Staats, having in his hands the money of the state, might have executed a mortgage to the commissioners which would have become a valid lien even as against subsequent bona fide incumbrancers. But to do this, the mortgage must have been acknowledged and recorded according to the provisions of the recording act. Then, when the plaintiffs, being about to make their loan, came to search for incumbrances, the record of the mortgage would have been found in its proper place. Then there would have been no opportunity for concealing the knowledge of its existence, by placing the record among mortgages which had been executed eight years before. No such state of facts as that which has resulted in this litigation could have existed.

As between the mortgagor and the mortgagees, the mortgage is undoubtedly a valid lien. The mortgagor himself is estopped from denying the validity of the transaction. But, as against the plaintiffs, who are subsequent incumbrancers,

N. Y. Life Ins. and Trust Co. *v.* Staats.

and not chargeable with notice of the lien, the mortgage is void, for the reason that it has neither been executed in such a manner as to make it a valid mortgage under the provisions of the loan act, nor recorded as an ordinary mortgage.

There must be the usual judgment of foreclosure and sale. There will be no necessity for a reference to ascertain the amounts due upon the several incumbrances. These amounts were sufficiently established upon the trial. The proceeds of the sale are to be applied, first, to the payment of the plaintiffs' costs, and then the amount due the plaintiffs upon their bond and mortgage ; secondly, to the payment of the costs of the Albany City Bank and the amount due upon their mortgage; and lastly, the surplus, if any, is to be applied to the payment of the mortgage to the loan commissioners.

There must be a similar judgment in the other suit between the same parties. As the mortgage to the Albany City Bank embraces the premises in both suits, the loan commissioners are to be at liberty to elect which premises shall be sold first, and to have the City Bank mortgage paid in such a manner as to secure the greatest surplus applicable to their mortgages.

[ALBANY SPECIAL TERM, October 31, 1854. *Harris*, Justice.]

N. B. This judgment was affirmed by the general term, on appeal.