## SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF COURTLANDT PALMER, TO HAVE ASSESSMENT FOR BUILDING SEWER IN THIRTY-FOURTH STREET VACATED AS TO CERTAIN PROPERTY ASSESSED.

Where *assessors* in the city of New York, appointed to assess lands for a local improvement, assess the lots of an owner at more than one-half the value of such lots, as valued by the *assessors of the ward* in which the same are situated, it is a violation of the statute (*Laws* 1840, *chap.* 326, § 7), and a *legal irregularity*, and the court is authorized, under the act of 1858 to vacate and set aside such assessment.

The objection that the *confirmation of the assessment* is conclusive as to all questions of regularity not raised prior to the confirmation, cannot be sustained in such a case, as the act of 1858, does not require any such preliminary proceed-

In the matter of building Sewer in Thirty-fourth street.

ing to entitle a party aggrieved to the benefit of the statute. The whole provision of the act of 1858 is in reference to relief from assessments *after confirmation.*

The act (*Laws of* 1861, *p.* 702) creating a board of *revision and correction* of assessment lists—composed of the comptroller, counsel to the corporation and the recorder of the city—seems to require that all three of the members *should meet together* for the purpose of acting, but it prescribes that a vote of a *majority* of such board shall decide the questions in regard thereto.

*New York General Term, November,* 1865.

*Before* INGRAHAM, *P. J.,* LEONARD *and* BARNARD, *Justices.*

THE petitioner being owner of certain property under water, discovered that an assessment had been laid upon his property, and applied to have the same vacated, pursuant to an act of 1858, upon the grounds:

*First.*—That the board of revision and correction of assessments had never in fact had jurisdiction to act, nor had legally acted upon the assessment.

*Second.*—That the assessment was contrary to the provision of the act which limits amounts of assessments to one-half the value of the property, as valued by the ward assessors, the assessment being for this sewer from one hundred and forty-two to one hundred and ninety-three dollars, upon lots assessed by the ward assessors at only one hundred dollars.

*Third.*—That the property being under water was not liable to assessment in any case.

*Fourth.*—That the property was not liable to this assessment, as being below tide water, it could not possibly be drained or benefited by a sewer.

A judgment order was given vacating the assessment, pursuant to the act. From this an appeal is taken on the part of the corporation.

JOHN E. DEVELIN, *counsel to the corporation.*

Appeal from a judgment rendered at special term, vacating the above assessment as to certain lots belonging to the petitioners. The objections to the validity of the assessment are three in number:

*First.*—That the assessment has never been legally confirmed.

*Second.*—That the assessment upon the lots of the petitioners exceeds one-half of the assessed valuation of those lots in the ward in which they are situated.

*Third.*—That the lots are not benefited by the improvement for which the assessment was laid.

I. The objection that the assessment has never been legally confirmed cannot be sustained.

(a) The petitioner insists that the confirmation of the assessment in the absence of the recorder was void, within the rule that, when power to do an act is conferred upon three or more persons, all must meet and consult even though a majority may act. This rule does not apply in the present instance, because of the provision of the statute creating the board of revision, which declares that, in case an assessment is not confirmed within thirty days after it is presented for confirmation, it shall be deemed confirmed (*Laws of* 1861, *chap.* 308, *p.* 702, § 1).

This assessment was received from the board of assessors on the 11th day of July, 1861.

The assessment, therefore, was confirmed by force of the statute on the 13th day of August, 1861. It is certain that the recorder knew of the confirmation after it was made, since he was present at the next meeting of the board of revision, on the 24th day of July, 1861, and approved of the minutes of the 11th of July, 1861, which recited that this assessment list had been received and confirmed.

On the 24th day of July, 1861, every member of the board of revision knew that the board of assessors had transmitted this assessment list to them for confirmation, and, if prior to this date no valid action had been taken by them to confirm the assessment, it at once became their duty to take some step toward its confirmation; and in default of any action upon the part of the board of revision the assessment list was confirmed by force of the statute on the 25th day of August, 1861, that date being thirty days after it was known to each member of the board of revision

that the list had been presented for confirmation. Such clearly must be the result if any force is to be given to the provision of the act of 1861 (*Laws of* 1861, *supra*).

(*b*) The *presence* of the recorder at the meeting of July 11, 1861, was not indispensable to the validity of the act of confirmation, for the rule relied upon by the petitioner is not without exception, but is subject to the reasonable modification that, when all the persons invested with power to perform an act are notified, a majority may meet and act, and their action will be valid. (*Horton* agt. *Garrison,* 23 *Barb.* 176; *People* agt. *Walker,* 23 *Barb.* 304; *People ex rel. McSpedon* agt. *Supervisors,* 10 *Abb. Pr. R.* 233.)

In the absence of all negative testimony it should be presumed that the recorder was notified of the meeting of July 11, 1861, and neglected or refused to attend. Presumptions similar in character have met with the approval and received the sanction of the courts, as will appear from an examination of the following authorities : (*Yates* agt. *Russell,* 17 *Johns.* 461; *McCoy* agt. *Curtice,* 9 *Wend.* 17; *Downing* agt. *Rugar,* 21 *Wend.* 178; *Doughty* agt. *Hope,* 3 *Denio,* 249; *Miller* agt. *Garlock,* 8 *Barb.* 157; *Tucker* agt. *Rankin,* 15 *Barb.* 471; *People* agt. *Carpenter,* 24 *N. Y.* 86.)

Indeed, it has ever been the rule that, in these proceedings to vacate assessments under the act of 1858, " it is necessary for the petioners to make out affirmatively the irregularity of the proceedings, and not throw upon the city the necessity of proving its proceedings regular before they are impeached " (*Babcock's case,* 23 *How.,* 118).

Especially ought the presumption to be indulged, and the rule prevail, as respects an objection so technical as that which is urged against the validity of the confirmation of this assessment.

II. The objection that the property of the petitioner is not benefited by the assessment, and the further objection that the amount assessed upon the lots exceeds one-half their value as valued by the ward assessors, are not available to the petitioner.

(*a*) The question of benefit was one which rested in the

judgment of the assessors. They decided that question in
the affirmative. In street opening cases, which, so far as the
assessments for benefit are concerned, are precisely analo-
gous to cases of ·assessments for local improvements,
questions of value and benefit are never reviewed upon the
presentation of the commissioners' report for confirmation,
unless the objections were taken before the commissioners.
(*Harman street*, 16 *Johns.* 231; *Matter of Pearl street*, 19
*Wend.* 649; *John and Cherry streets*, 19 *Wend.* 657; *William
and Anthony streets*, 19 *Wend.* 680; *Owners of ground* agt.
*Mayor*, 15 *Wend.* 374, 377; *Lyon* agt. *City of Brooklyn*,
28 *Barb.* 609; *Washington Park, Brooklyn*, 1 *Sandf.* 283.)

The act of 1841 furnished an opportunity for the peti-
tioner to raise this objection before confirmation (*Laws of*
1841, *p.* 143.)

No objections having been presented, the petitioner ought
not to be permitted to raise it at this late hour.

It is clear that, in order to vacate the assessment upon
the ground that the petitioner's property was not benefited
by the improvement, the court must substitute its own
judgment for that of the assessors, and convict those sworn
and disinterested officers of error upon the mere opinion
of the petitioner whose interest it is to have the assessment
vacated.

The assertion and argument in support of this objection
is that the petitioner's property derives no *present* benefit
from the improvement. Conceding the fact to be as asserted,
it is still without force, for the reason that the assessors, in
making their assessment, had a right to consider the *pros-
pective* benefit to the petitioner's property. (*Downer* agt.
*City of Boston*, 7 *Cush.* 277; *Wright* agt. *City of Boston*, 9
*Cush.* 233.)

(b) The objection that the assessors assessed the peti-
tioner's property an amount exceeding one-half its value as
valued by the ward assessors is not available to the peti-
tioner. The confirmation of the assessment is conclusive
upon all questions of regularity not affecting the jurisdiction
of the assessors, and which were not raised prior to the

confirmation of the assessment. (*Miller's case*, 12 *Abb.*, 121; *Babcock's case*, 23 *How.* 118; *Sandford* agt. *Mayor*, 33 *Barb.* 147; *People* agt. *City of Rochester*, 21 *Barb.* 657, 671.)

In *Miller's case*, LEONARD, J., treats the act of confirmation as a *judgment* of a tribunal of special and limited jurisdiction, which, in cases free from fraud, and when none of the steps requisite to give jurisdiction have been omitted, is *conclusive* upon parties and privies.

(*c*) It is apparent that it would be unjust to the corpo-ration to vacate the assessment for the reasons urged. Had the attention of the assessors been called to these objections upon the publication of the notice by them inviting objections to the assessment, they could then have corrected their mistake, and distributed the surplus among the owners of other property benefited by the improvement. It was the petitioner's neglect which occasioned him the injury, and he now seeks to be excused from the consequence of that neglect and have it visited upon the corporation. The case is not distinguishable from that of *Babcock's* (23 *How.* 118), and the objections should not receive greater indulgence than was accorded to those relied upon in that case.

III. The judgment vacating the assessment should be reversed.

HENRY H. ANDERSON, *for petitioner*.

*Preliminary.*—No appeal lies from an order entered in these proceedings vacating an assessment. The order made by the justice in vacating the assessment is final, and not subject to review (*Matter of Dodd*, 27 *N. Y.* 629).

But if an appeal can be entertained, the order was right, and should be sustained.

*First.*—The act of May 13, 1840 (*Val. Laws, p.* 1244, § 7), is explicit and prohibitory, and was wholly disregarded. The provision is, that "assessors making assessments authorized by law shall in no case assess any house, lot, improved or unimproved lands more than one-half the value

of such house, lot, &c., as valued by the assessors of the ward in which the same shall be situate."

It was beyond the power of the assessors to make a valid assessment beyond such one-half. This they have attempted to do, and their attempt must fail. The decision below was on this ground correct.

*Second.*—The proofs disclose that the assessment list in question was in fact never presented to the board of revision and correction of assessments, nor was it acted upon by that board even so far as to confer in regard to it.

(*a*) The act of 1861 (*Laws of* 1861, *p.* 702; *Val. Laws, p.* 480) vests the power theretofore vested in the common council relative to confirmation of assessment lists "exclusively in the comptroller, the council to the corporation, and the recorder of said city, who *together shall constitute a board* of revision and correction of all such assessment lists, and the vote of a majority *of such board* shall decide the questions in regard thereto."

It is further provided that all assessment lists shall be confirmed within thirty days after the same are presented to *the said board.*

The requirement of the law, then, is, that three persons named should be together in order to constitute the board. This requirement was made as a protection to the owners of property to be charged with the payment of expenses of improvements whose objections are to be heard and considered by *the board,* and is part of that series of acts which are to be strictly obeyed. Unless, therefore, the three met there would be no lawfully organized board of which a majority could vote. Each person assessed was entitled to the weight of the opinion of all three.

(*b*) It appears by the testimony of R. A. Storrs that on the occasion at which this list came from the assessors only two members were present, and that it was never acted upon nor considered at any other meeting, nor did the *three* at any time receive or confer respecting it.

*Third.*—The principle is too well settled to be now disturbed, that where any three persons (not a court) are

In the matter of building Sewer in Thirty-fourth street.

appointed to act *judicially* upon a public matter they must all *confer*, but a majority may decide, and this rule is rigidly enforced in cases tending to divest a man of title to his property.

The case at bar is even stronger than any of the adjudicated cases, for this statute provides not simply that the three persons named shall constitute a board, but that they *together* shall constitute it. (*Doughty* agt. *Hope*, 1 *Comst.* 82; *Ex parte Rodgers*, 7 *Cow.* 526; *The People* agt *Walker*, 23 *Barb.* 304; *Lee* agt. *Perry*, 4 *Denio* 125; *Sharp* agt. *Johnson*, 4 *Hill* 99; *The King* agt. *Forrest*, 3 D. & E. 38; *The King* agt. *Inhab. of Hamstall Ridware*, 4 D. & E. 380; *Powell* agt. *Tuttle*, 3 *Comst.* 396.)

*Fourth.*—The property of the petitioner was not within the jurisdiction of the assessors. It was under water and not within the description of assessable property. The property liable to assessment must be such as could reasonably be said to be subject to occupancy. Assessable property must be houses or *lots* of land, such lots being such description of property as might have houses erected thereon.

The property assessed was under water, below tide water, and could neither be built upon nor drained by the sewer. The only effect of the construction of the sewer would be, if at any time the land should be made and lots created upon the said property, to conduct the water to such property.

*Fifth.*—The assessment was properly vacated, and the order below should be affirmed.

*By the Court,* INGRAHAM, P. J. This appeal is from an order vacating an assessment on lots on Thirty-fourth street for building a sewer.

It appears from the decision of the justice at special term, that the same was made on the fact that the assessors assessed the lots of the petitioner at more than half the value of such lots, as valued by the assessors of the ward in which the same are situated. The proofs show that the lots were valued by the assessors as worth one hundred

dollars and were assessed each from one hundred and forty-two dollars to one hundred and ninety-three dollars.

By the act of 14th May, 1840 (*ch.* 326, § 7), it is enacted that the assessors shall in no case assess any house, lot, improved or unimproved lands more than one-half the value of such house or lots, &c.; as valued by the assessors of the ward in which the same shall be situate. The act of 1841 in no ways amends this section of the act of 1840.

The subsequent change in the mode of appointing assessors to a board of assessors (*Sess. Laws*, 1859, *ch.* 302), requires the board to make the assessments in accordance with existing laws, and did not therefore affect these provisions.

It is very clear that the assessors erred in charging upon the lots of the petitioner a greater sum than one-half of the assessed value. Their power in this respect was limited by the statute, and when they exceeded it they committed an irregularity in laying the assessment in violation of the law. It seems to me to be clear that this is within the provisions of the statute of 1858, under which this proceeding is taken. That act provides for this application whenever " in the proceedings relative to any assessment for local improvements any fraud or legal irregularity shall have been committed " and that the assessment may be vacated. In this case the error consists in laying the assessment on lots to an amount exceeding one-half the assessed value. It was clearly contrary to the law and is in my judgment a legal irregularity as contemplated by the act.

The counsel for the corporation does not object to the action of the special term on this ground, but he contends that the confirmation of the assessment was conclusive as to all questions of regularity not raised prior to the confirmation. I think it would be a sufficient answer to this objection to say that the act of 1858 does not require any such preliminary proceeding to entitle a party aggrieved to the benefit of the statute. The decisions in regard to opening streets, &c., are referred to, but those proceedings are entirely distinct. There the objection is to the confirmation,

and is required to be made after notice is given of an application to the court for confirmation, and when confirmed the assessment is made conclusive upon all persons whomsoever. No such provision is made as to assessments for local improvements, but notice is to be given of the assessment and parties aggrieved are notified to present their objections. It may be a good objection that the party did not make objections to the assessors, if complaint was made to the board of revision, &c., to prevent the confirmation, but it extends no further. The whole provision of the act of 1858 is in reference to relief from assessments after confirmation.

It is also contended that the assessment never was confirmed, because only two of the members of the board met when it was acted upon.

Where a board is formed for the purpose of acting as this board is authorized to act, the rule undoubtedly is that all the members should meet together, but that the acts of a majority are valid, unless the statute authorizes a less number to act. (*Downing* agt. *Ruger*, 21 *Wend.* 178; *Powell* agt. *Tuttle*, 3 *Comst.* 396; *Doughty* agt. *Hope*, 1 *Comst.* 79.)

This construction is strengthened by the words of the act which says that the persons appointed shall "*together constitute* a board of revision and correction of all such assessment lists, and the *vote* of a majority of such board shall decide the questions in regard thereto. This seems to require the presence of all the members, but allows a confirmation by the vote of a majority. In the statute relative to opening streets, &c., it is expressly provided, in order to meet this difficulty, that any two of the commissioners might execute and perform the duties of their appointment (*Act of* 1813, 2 *R. L.* § 138). No such provision is to be found in the act of 1813 requiring the appointment of assessors for such local improvements, nor in the act of 1858. It is not however necessary to put the decision of this case upon this ground. The first objection which I have examined is so plainly within the provisions of the act of 1858 that it is unnecessary to examine the others.

The order appealed from should be affirmed with costs.

I think the assessors exceeded their power by imposing an assessment exceeding one-half the assessed value of the lots.                        WM. H. LEONARD.