## FIRST NATIONAL BANK OF NORTH BENNINGTON *v.* TOWN OF MOUNT TABOR.

*Bills and Notes. Discharge by a Majority, of a Public Trust Delegated to Several. Defences to Action for Interest on Town Bonds by* Bona-Fide *Purchaser for Value. Gen. Sts. c. 4, s. 2.*

Detached interest coupons payable to bearer at a special time and place, have all the attributes of negotiable paper; and assumpsit will lie thereon.

In assumpsit by the *bona-fide* holder of town bonds, to recover the interest specified in coupons thereof, of which the plaintiff was also the *bona-fide* holder, it appeared that the bonds were issued under authority of an act passed to enable the defendant, among other towns, to subscribe for railroad stock in aid of the construction of a railroad, and to issue bonds for that purpose. The act provided that "the assent in writing thereto of a majority of the tax-payers", signed and acknowledged before a justice of the peace by "each person so assenting", should first be had upon an instrument of assent, naming three resident citizens and tax-payers to be commissioners to make such subscription; that when such instrument had been so signed and acknowledged, such commissioners should "append thereto a certificate by them subscribed and sworn to", stating that such assent had been signed and acknowledged, as required by the act, and should cause such instrument and certificate to be recorded in the town clerk's office; and that "such certificate so executed and recorded" should be conclusive evidence of the facts stated, and by the act authorized to be stated, therein. Defendant offered to prove that the instrument of assent was not signed by a majority of the tax-payers, that but two of the commissioners signed the certificate, and that the third refused to sign because such instrument had not been signed by such majority. *Held,* that at common law, as well as under s. 2, c. 4, Gen. Sts., the certificate of the two commissioners, the third having shared in their deliberations but refused to concur in their decision, was a valid certificate in compliance with the act, and conclusive evidence of the facts therein stated; and that the evidence offered by defendant was therefore inadmissible.

Other evidence, *q. v.,* was offered to prove that other requirements of the act had not been complied with, but it was *held* that, the law being as above, it was inadmissible.

GENERAL ASSUMPSIT to recover the interest on certain bonds issued by the defendant. Plea, general issue, with notice of special matter. Trial by jury, September Term, 1878, BARRETT, J., presiding.

The plaintiff introduced in evidence fourteen bonds for $500 each, dated July 1, 1867, payable July 1, 1897, with interest at

seven per cent. per annum payable semi-annually, signed by the defendant's treasurer, and signed and sealed by two of its select-men, and also fifty-six detached interest coupons, signed by the defendant's treasurer, and payable on January 1 and July 1, in successive years, at the plaintiff's bank. The plaintiff also intro-duced evidence tending to show that prior to the date of said bonds the defendant, acting under authority of an act of the Leg-islature entitled " an act to enable the towns therein mentioned to aid in obtaining necessary railroad communications", and ap-proved March 28, 1867, and for the purpose of aiding in the building of a railroad from Chatham Four Corners in New York to the Vermont state line, subscribed for bonds and stock of the Lebanon Springs Railroad Company, a corporation existing un-der the laws of New York, to the amount of $7,000 ; and that the bonds, the interest on which was in question, were issued at par to Trenor W. Park, a director in said company, in payment of said subscription, and in exchange for stock of said company to an equal amount, and for bonds of said company of even date therewith, to the same amount, payable, with interest at the same rate, at the same time and in the same manner, all of which were delivered to said town. The defendant's bonds bore on their face a statement that they were issued under authority conferred by said act, and under the assent of the defendant made in pursuance thereof.

That act authorized certain towns, the defendant among others, to subscribe for, purchase, or acquire, on conditions therein speci-fied, bonds of said company, or the bonds or stock of any railroad company whose road should connect in a certain manner with cer-tain railroads in this State running through and near said towns, and to make and issue their own negotiable bonds, signed by the select-men and countersigned by the treasurer, for that purpose. But the act provided that no such subscription should be made, " unless the assent in writing thereto of a majority of the tax-payers, both in number and amount of tax," signed and acknowledged before a justice of the peace " by each person so assenting", should first be had upon an instrument of assent naming three resident citizens and tax-payers to be commissioners to make said subscription.

The act further provided, so far as material to the questions here involved, as follows :

SEC. 6. When any instrument of assent herein provided for shall have been signed and acknowledged by the majority, and in the manner herein required, the commissioners named in such assent shall append thereto a certificate by them subscribed and sworn to, stating that such assent has been signed and acknowledged by such majority, as required by this act, and shall cause such instrument of assent and certificate to be filed in the town clerk's office of the town where the same has effect, and cause the same to be there recorded . . . Such certificate so executed and recorded shall be conclusive evidence of the facts stated, and by this act authorized to be stated, therein.

SEC. 7. If any of the commissioners provided for in this act, shall die or remove from this State, or become incapable of acting, application may be made by any signer of the instrument of assent wherein such commissioner was named, to the court of chancery, for the appointment of a commissioner in the place of the one so deceased, removed, or incapable. . . .

The plaintiff also introduced evidence tending to show that Park, who was a director in said company and also the builder of its road, received said bonds of the defendant soon after their date, in part payment under his contract with the company, and as the agent of said company ; that neither he nor the plaintiff ever knew of any defence to the bonds, or that any defence was claimed other than one concerning the constitutionality of the act under which they were issued, until after this action was brought; that, so far as Park knew, no officer of said company had any knowledge or suspicion of any other defence, and that neither he nor the plaintiff knew but that all of the commissioners named in the instrument of assent had signed the certificate thereto appended, until within four or five months of the time of trial ; that Park, while building said road, and therein using a large amount of money, kept said bonds, with those of other towns to a large amount, on deposit with the plaintiff, where, as he drew beyond his other deposits, they were passed to his credit, and where, when he had more money on deposit than he needed for his business, they were charged back again, and so on for a time, until several years before this action was brought, when Park sold them to the plaintiff at par and accrued interest, after which they were

ever owned by the plaintiff; and that Park was the president of the plaintiff and ever had been, and was its largest stockholder. It was conceded that the persons who signed the bonds as selectmen were two of the defendant's selectmen at the time the bonds were issued. After introducing evidence as above stated the plaintiff rested.

The defendant thereupon offered in evidence a certified copy of the record of the instrument of assent under which the bonds were claimed to have been issued, whereby it would have appeared that the assent was to a subscription for the bonds of said company to the amount of $7,000, on condition, first, that the bonds should be of an issue not to exceed $2,000,000, payable in thirty years, and secured by mortgage; secondly, that on payment by the defendant for said bonds, the company should deliver to trustees therein named capital stock in the company to an amount equal to the amount of the bonds, &c.; and that the certificate appended to the instrument of assent, although it certified that the instrument had been duly executed by the tax-payers, was itself signed by but two of the commissioners. The defendant also offered to prove that the instrument of assent was not signed by a majority of the tax-payers; that the sixth section of said act was not complied with, " in that but two of the three commissioners named in the instrument of assent . . . ever signed the certificate appended to such assent, one of said three commissioners . . . refusing to sign such certificate for the reason that said instrument of assent had not been signed by a majority of resident tax-payers of said town, as required by said act "; that the second condition of the instrument of assent was never complied with, in that said company never delivered to the trustees therein named any of its capital stock; that the subscription for said stock was not made agreeably to the provisions of the instrument of assent or of the act, in said particulars; that the bonds were issued only as payment for the bonds and stock of said company, and were signed by two only of the defendant's three selectmen, the other refusing to sign them, as he then claimed, on account of their illegality.

The court, pro forma, excluded the evidence so offered, and directed a verdict for the plaintiff; to which the defendant ex-

cepted. There was evidence introduced on the part of the plaintiff proving that the defendant had paid some of the earlier coupons, and had voted in town meeting to sell its railroad bonds, provided it could purchase its own bonds at a premium of not more than five per cent; and the defendant offered evidence tending to show the circumstances attending those acts of alleged ratification, and that the defendant in no other way ratified the bonds, which was excluded. But as the question of ratification is not material to the questions decided, the evidence is not stated.

*W. G. Veazey* and *W. C. Dunton*, for the defendant.

The defendant is not estopped to deny the validity of the bonds by reason of the recital therein of the authority under which they were issued, the commissioners, and not the selectmen, having been the authority charged with determining whether the conditions on which the bonds should issue had been complied with. *Commissioners of Knox County* v. *Aspinwall*, 21 How. 539; *Bissell* v. *Jeffersonville*, 24 How. 287; *Lynde* v. *The County*, 16 Wal. 6, 13; *Coloma* v. *Eaves*, 2 Otto, 484; *Marcy* v. *Oswego*, 2 Otto, 637; *Commissioners of Douglass County* v. *Bolles*, 4 Otto, 104; *Commissioners* v. *January*, 4 Otto, 202. The act of the selectmen in issuing the bonds with that recital therein, is not conclusive as to the certificate. The purchaser should look for himself to that extent. *First National Bank of St. Johnsbury* v. *Concord*, 50 Vt. 257, 281; *Bennington* v. *Park*, 50 Vt. 178, 210; *East Oakland* v. *Skinner*, 4 Otto, 255. Until the things required were done, the selectmen had no authority to issue, and the issuing was *ultra vires*, and the bonds were void. *Marsh* v. *Fulton*, 10 Wal. 676; *Aspinwall* v. *Commissioners of Daviess County*, 22 How. 364; *Gould* v. *Sterling*, 23 N. Y. 439; *Society for Savings* v. *New London*, 29 Conn. 174.

It follows that the evidence as to non-compliance with the act should have been admitted. If the evidence was true, the bonds were void. The act of the two commissioners was not the act of the commissioners. True, when no provision is made giving effect to the decision of a majority in a public judicial body, if all convene and act, the majority may decide; but it is otherwise as

to a private arbitration, where the judges are chosen by the parties ; there the body must be unanimous. Ex parte *Rogers*, 7 Cow. 529 : *Green* v. *Miller*, 6 Johns. 39 ; *Crocker* v. *Crane*, 21 Wend. 211 ; *Downing* v. *Rugar*, 21 Wend. 178. Here the authority was joint. *Danville* v. *Montpelier & St. Johnsbury Railroad Co.* 43 Vt. 144 ; *Hodges* v. *Thacher*, 23 Vt. 455 ; Co. Lit. 181*b* ; 2 Kent Com. 633 ; Story Agency, s. 42. This was not a case of irregularity merely, like *Supervisors* v. *Schenck*, 5 Wal. 772, but of failure to do that without which nothing more could be done.

The coupons were cut from the bonds. Can assumpsit be maintained thereon ? *Ellicott* v. *United States Insurance Co.* 8 G. & J. 166 ; *Maine Insurance Co.* v. *Young*, 1 Cranch C. C. 238 ; *Crosby* v. *New London W. & P. Railroad Co.* 26 Conn. 121 ; 1 Chit. Pl. 110.

*E. J. Phelps*, for the plaintiff.

The plaintiff is a *bona-fide* holder of the coupons. *Bennington* v. *Park*, 50 Vt. 178.

As such holder the plaintiff was entitled to recover, on proof that the bonds and coupons were signed and issued by the selectmen, &c. The power to issue being so established, the recital in the bonds estops the defendant from denying, as against such a holder, that the requirements of the act were duly complied with. *Danville* v. *Montpelier & St. Johnsbury Railroad Co.* 43 Vt. 144 ; *Commissioners of Knox Co.* v. *Aspinwall*, 21 How. 539 ; *Pendleton Co.* v. *Amy*, 13 Wal. 297 ; *San Antonio* v. *Mehaffey*, 6 Otto, 312 ; *Venice* v. *Murdock*, 2 Otto, 494, and cases *passim*. It is said that the recital is not conclusive because not made by the commissioners, and that the cases above cited proceed on the ground that the officials signing the articles were the ones specially charged with the duty of ascertaining the facts recited. But that is founded in misapprehension of the principle of those cases. The question is not as to which set of officers is required to ascertain or certify the fact, but as to whether the general agents of the town, authorized to act for the town in the issue and sale of the bonds, as in other matters, have estopped the town by their representations.

There is nothing in the evidence offered that would constitute a defence. The holder was not bound to inquire as to whether the instrument of assent was certified at all. But the signature of the two commissioners was sufficient. It was so under the statute, Gen. Sts. c. 4, s. 2, and so at common law. *Downing* v. *Rugar*, 21 Wend. 178 ; *Commonwealth* v. *Canal Commissioners*, 9 Watts, 466 ; *Commissioners of Allegheny Co.* v. *Lecky*, 6 S. & R. 166 ; *Baltimore Turnpike*, 5 Binn. 481 ; *Cooper* v. *Lampeter Township*, 8 Watts, 125 ; *Curtis* v. *Butler County*, 24 How. 435, 450 ; *Day* v. *Green*, 4 Cush. 433, 439 ; *Charles* v. *Hoboken*, 3 Dutcher, 203 ; Ex parte *Rogers*, 7 Cow. 526 ; *Martin* v. *Lemon*, 26 Conn. 192 ; *George* v. *School District*, 6 Met. 497, 511. The defendant's offer of proof necessarily implies application to and action by the third commissioner. He thus participated in the duty, but did not concur in the result. If the certificate is legal, it is conclusive ; and evidence to show that it was untrue was inadmissible, as against a *bona-fide* holder. *Bennington* v. *Park*, *supra*. The certificate is conclusive evidence of the facts stated. *Bissell* v. *Jeffersonville*, 24 How. 288, and cases *passim*. It is immaterial that but two selectmen signed the bonds. Gen. Sts. c. 15, s. 92; *First National Bank of St. Johnsbury* v. *Concord*, 50 Vt. 257, 282.

The opinion of the court was delivered by

ROYCE, J. This was an action brought to recover the interest due upon certain bonds purporting to be issued by the defendant town under the authority conferred by No. 1 of the Acts of the Special Session of 1867, and represented by interest coupons cut from such bonds. Interest coupons detached from bonds, payable to bearer at a specified time and place, are negotiable promises for the payment of money, and therefore subject to the same rules as bank notes or other negotiable instruments. They are, in effect, promissory notes by the law merchant, and possess all the attributes of negotiable paper. Jones Railroad Securities, ss. 317, 320, 322, and authorities there cited. *Town of Concord* v. *National Bank of Derby Line*, 51 Vt. 144. Assumpsit will therefore lie.

The plaintiff was a *bona-fide* holder of the coupons sued upon, without notice of any defense to said coupons or the bonds to which they were originally attached, and which were also owned by the plaintiff. To defeat the plaintiff's right of recovery, the defendant offered evidence tending to show that the facts set forth in the certificate which was signed and caused to be recorded by two of the three commissioners named in the instrument of assent to which said certificate was appended, were not true. The act provides (section 6) that such certificate, if duly executed and recorded, shall be conclusive evidence of the facts therein set forth. See *First National Bank of St. Johnsbury* v. *Concord,* 50 Vt. 257, 281. The claim of the defendant is that the certificate in this case, being signed by but two of the three commissioners, was not a compliance with the act, and consequently does not estop the town from disproving the truth of the facts set forth in it. The offer was to show that the third commissioner refused " to sign such certificate for the reason that such instrument of assent had not been signed by a majority of the resident tax-payers of said town, as required by said act "; which necessarily implies that he acted with his associates, although the case does not show that he took the oath required by section 6, so far as to satisfy himself that the requisite assent did not appear upon the instrument, and thereupon refused to concur with them in the decision which they reached and embodied in their certificate. The question of law presented for our decision, then, is, Was the act of two of the three commissioners, the third sharing in their deliberations but refusing to concur in their decision, a sufficient compliance with the law? In view of the fact that there is a dictum by WHEELER, J., in *Danville* v. *Montpelier & St. Johnsbury Railroad Co.* 43 Vt. 144, 155, in which that learned judge expresses the opinion, upon common-law principles, that the authority conferred upon the commissioners under an enabling act almost precisely similar in its terms, so far as the duties and powers of the commissioners are concerned, to this one, was a joint authority, in the exercise of which all must concur, we have deemed it proper to give to the subject a more extended consideration than we should otherwise have thought necessary. It seems, at com-

mon law, that when an authority is conferred upon several it is sometimes necessary to its lawful exercise that all should act together and all concur in the result, while under other circumstances the decision and act of the majority is good, provided all meet and deliberate, or have notice so to do; and in yet other cases the act of the majority, or the majority of the quorum alone, will be upheld. In the case at bar it is only necessary to deduce from the authorities which of the two first named rules is to be here applied.

The distinction is laid down by Lord COKE, Co. Lit. 181*b* : " Secondly there is a diversitie between authorities created by the partie for private causes and authoritie created by law for execution of justice. As, for example, if a man devise that his two executors shall sell his land, if one of them dye the survivor shal not sell it ; but if he had devised his lands to his executors to be sold, then the survivor shall sell it. . . . If a man make a letter of atturney to two, to do any act, if one of them dye the survivor shall not do it ; but if a *venire facias* be awarded to foure coroners to empannell and returne a jury, and one of them dye, yet the other shall execute and returne the same. If a charter of feoffment be made and a letter of atturney to foure or three joyntly or severally to deliver seisin, two of them cannot make liverie ; because it is neither by them foure or three joyntly, nor any of them severally ; but if the sherife upon a *capias* directed to him make a warrant to foure or three joyntly or severally to arrest the defendant, two of them may arrest him, because it is for the execution of justice, which is *pro bono publico*, and therefore shall be more favourably expounded, than when it is onely for private ; and so hath it beene adjudged. *Jura publica ex privato promiscue decidi non debent.*". Following and applying this principle, the decisions down through the English reports, though not numerous upon this point, are clear that when an act is to be done by several which is matter of public concern, all must meet and confer, and the majority may then decide. In *Billings* v. *Prinn*, 2 Bl. 1017, where a warrant of commitment required to be signed by two justices and they acted separately, Lord DEGREY, C. J., said : " There is no Use in appointing two or more Persons to

exercise judicial powers, unless they are to act together." This case was expressly followed in *The King* v. *Forrest*, 3 T. R. 38. In *The King* v. *Beeston*, 3 T. R. 592, the church-wardens and overseers, with the consent of the major part of the parishioners, were authorized by statute to contract for the support of the poor. All but one of the church-wardens and overseers acted in making a contract, and he refused to join. The act of the majority was held sufficient. Lord KENYON, C. J., said: " A contract has been entered into in which the parish at large is concerned, and which the act of parliament has enabled the parish officers with the concurrence of the parish to enter into, and the question is whether one obstinate man, in opposition to all the rest of the parish, *in* an act in which they are more interested than he is, shall be able to defeat their purpose. I do not mean to say that the church-wardens and overseers are technically a corporation ; but as far as concerns the regulation of the poor of the parish they stand *in pari ratione*. . . . This is very different from the case of trustees in settlements, who are generally chosen by the different branches of the family, in which case it is necessary that they should all concur in every act, in order that each may protect the interest which he was appointed to guard." In *Witherell* v. *Gartham*, 6 T. R. 388, a power given by deed to the vicar and church-wardens to appoint a schoolmaster was held well executed by the vicar and a majority of the church-wardens, it being strongly urged by counsel, among other things, that the trust was one of a public nature. LAWRENCE, J., says: " In general it would be the understanding of a plain man that, where a body of persons is to do an act, a majority of that body would bind the rest." In *Grindley* v. *Barker*, 1 B. & P. 229, which is regarded as a leading case upon this point, a condemnation by four out of six triers of leather appointed under a statute, the whole number having met and deliberated, was sustained. EYRE, C. J., says : " I think it is now pretty well established that where a number of persons are entrusted with powers not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole "; referring to the opinion of Lord

HARDWICK, in *Attorney General* v. *Davy*, 2 Atk. 212,—"when all have assembled and communicated to each other the necessary information, it is fitter the majority should decide than that all should be pressed to a concurrence." BULLER, J.: "Now it seems to me that upon the first question the authority of Co. Litt., if we went no further, is decisive, because it is there said in express terms that in matters of public concern the voice of the majority shall govern." HEATH, J.: "All must concur in trying, and then, though they be of different opinions, some of one opinion, some of another, yet all having tried, the majority shall bind." ROOKE, J.: "The authority given to the triers in the present instance is general to examine and try whether certain goods are serviceable or not, and is committed to them for the advancement of public justice, and as a public trust. Now the decisions are numerous, (and may be found in Viner, title Authority, letter B.,) to show that a different construction prevails with respect to private authorities and authorities for the advancement of public justice. . . . We shall not advance public justice by saying that though a majority of the triers who have had the advantage of all the information to be derived from the whole six who compose the tribunal, are of opinion that the leather is unserviceable, still any one man shall have it in his power to prevent a finding by holding out against the rest. All six must undoubtedly try ; but it does not therefore follow that they must all decide the same way. Each man is after due examination and inquiry to decide according to the best of his judgment, and the question is to be determined by the opinion of the majority."

Following these authorities and others in our own country, Chancellor KENT lays down the rule, 2 Kent Com. 633, to be : " And if the authority, in a matter of mere private concern, be confided to more than one agent, it is requisite that all join in the execution of the power ; though the cases admit the rule to be different in a matter of public trust ; and if all meet in the latter case, the act of the majority will bind." To the same effect is Story Agency, s. 42, and note. The principle has been applied in a large number of adjudged cases in this country. We shall only advert to some of the principal decisions.

13

In *Jewett* v. *Alton*, 7 N. H. 253, a case which in its facts has no special application here, the law is thus stated by GREEN, J. : " The rule is, that when an authority is given by law to three or more persons it may in general be executed by a major part of the persons to whom it is delegated. But where individuals or corporations give an authority jointly to three or more persons, in order to bind the principal all the agents must act." In *Patterson* v. *Leavitt*, 4 Conn. 50, the court say : " It is established beyond a question, that an authority given for a private purpose, to a number of individuals, is joint, and must be strictly pursued. On the other hand, if the power be of a public nature, the majority may perform the act delegated ; the power being considered as joint or several." This was a case of a private arbitration, and an award by two of the three arbitrators, the third dissenting, was held invalid. In *Scott* v. *Detroit Young Men's Society's Lessee*, 1 Doug. Mich. 119, it was held that, " as a general proposition it is undoubtedly true that where several persons are appointed to execute a power or trust, and no authority is given to a less number than the whole to act, all must join in its execution. A distinction is drawn, however, between a mere private trust or power and a power of a public nature conferred by law. In such cases, if all are present to deliberate, although a majority only assent to the act, it is unquestionably good." In *Commissioners of Allegheny Co.* v. *Lecky*, 6 S. & R. 166, it was held that where the commissioners of the county had authority under a statute to purchase a site for a jail, the power might be legally exercised by two of them without the concurrence of the third ; that " the rule that requires all to join in the execution of a power has never been applied to public business of a judicial nature, nor to public business of a deliberative nature, though not strictly judicial." See also *Commonwealth* v. *Canal Commissioners*, 9 Watts, 466, 471 ; *Cooper* v. *Lampeter Township*, 8 Watts, 125 ; *Kingsbury* v. *School District*, 12 Met. 99, 105 ;. *Charles* v. *Hoboken*, 3 Dutcher, 203 ; *Curtis* v. *Butler County*, 24 How. 435, 450 ; *Jones* v. *Andover*, 9 Pick. 145, 151, and *Cooley* v. *O'Connor*, 12 Wal. 391. In *Downing* v. *Rugar*, 21 Wend. 178, 182, one of two overseers of the poor acted in the performance

of a merely ministerial act, and it was held that the assent of the other was to be presumed. COWEN, J., in the opinion, says : " The rule seems to be well established that in the exercise of public as well as private authority, whether it be ministerial or judicial, *all* the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed. Where the authority is public and the number such as to admit of a majority, that will bind the minority after all have duly met and conferred."

The necessity for a meeting and deliberation of all the persons appointed to perform a duty calling for the exercise of.discretion, seems to be recognized by all the cases, unless it be obviated by circumstances which do not exist in the case at bar. In *Crocker* v. *Crane*, 21 Wend. 211, 218, the court, COWEN, J., say : " It has long been perfectly well settled that where a statute constitutes a board of commissioners or other officers to decide any matter, but makes no provision that a majority shall constitute a quorum, all must be·present to hear and consult, though a majority may then decide." This was a .case where commissioners were named in the act of incorporation of a railroad company " to open books, receive subscriptions, and distribute stock among subscribers as they shall deem most conducive to the interests of the corporation." It will be observed. that the duty with which these commissioners were charged was one in which the public at large had no direct interest, except as it might voluntarily become interested in the stock of the corporation, and the distinction in this case seems to be based upon the fact that the decision was not alone to affect parties to a transaction or adjudication in the first instance, and who might have had some voice in the selection of the board and the scope of its powers, but that the board was a creation of the law, and intrusted with duties of a judicial nature, in the discharge of which it necessarily had power to affect and bind parties who might subsequently come in, with notice of the terms and scope of the act.

In *Crocker* v. *Crane*, *supra*, reliance is had upon the decision in Ex parte *Rogers*, 7 Cow. 526, in which the court upheld the action of a majority of a board consisting of a canal commissioner

and two assessors, elected by the state senate to assess damages occasioned by canals. In the opinion *per curia* it is said : " But in regard to a public judicial body it is clearly settled that though no provision be made giving a binding effect to the decision of a majority, yet where they all convene and act, the majority may decide, notwithstanding the express dissent of the minority." Mr. Waterman's note (*a*) to this case states the law to be that, " where a public act is to be done by three or more commissioners appointed in a statute, and a competent number have met and conferred, though they separate and a majority do the act, without the presence of the others, the act seems good in construction of law ; though it is otherwise where there is a positive statute, or charter, requiring that a full board should be present at the consummation." The rule is, in substance, re-stated in *Johnson* v. *Dodd*, 56 N. Y. 76, and also in *Groton* v. *Hurlburt*, 22 Conn. 178. It is applied to ordinary town commissioners of highways in *Babcock* v. *Lamb*, 1 Cow. 238.

The general rule, that in matters of public interest the majority of those upon whom the power or authority is conferred may act, is recognized in *Baltimore Turnpike*, 5 Binn. 481 ; *Louk* v. *Woods*, 15 Ill. 256 ; *Walker* v. *Rogan*, 1 Wis. 597 ; *Jefferson County* v. *Stagle*, 66 Pa. 202 ; *Austin* v. *Helms*, 65 N. C. 560 ; provided all meet and confer ; but not when the minority is ignorant of the transaction, and has no opportunity to exercise its legitimate influence in the deliberation ; *Schenck* v. *Peay*, 1 Woolw. 175 ; or when the act in terms requires the presence and concurrence of all ; *New York Life Insurance & Trust Co.* v. *Staats*, 21 Barb. 570 ; *Powell* v. *Tuttle*, 3 Comst. 396 ; *People* v. *Coghill*, 47 Cal. 361, which only says all must be *present*, under the statute in question. In New York this is recognized to be the common-law rule, and is also expressly enacted by statute. 8 Abb. Pr. N. s. 234 ; 38 How. Pr. 508 ; 10 Abb. Pr. 233. In *Pell* v. *Ulmar*, 21 Barb. 500, one of the two public loan commissioners acted in the matter of foreclosure of a mortgage, and the court, holding this insufficient, say, STRONG, J. : " Where powers are conferred upon a number to act collectively, and especially in matters involving any discretion, it is an indication that the association if

not the concurrence of all is essential." And in *The People* v. *Walker*, 23 Barb. 304, which has no application to the case at bar in its facts, MITCHELL, J., in a very able and exhaustive opinion, says : " When persons are appointed by the law to act as *special* tribunals of a *quasi* judicial character . . . both parties are entitled to the presence of all the judges, and to have the benefits of the consultation of each with every other. All must therefore meet together and consult, but then a majority may decide. In *The Attorney General* v. *Davy*, 2 Atk. 212, three out of twelve persons had power to choose a chaplain. Two of the three chose a chaplain, the third dissented, and the question was whether this was a good choice. It was held to be good." The learned judge sums up his conclusions from a consideration of all the cases : " First, that where a private authority is conferred, all must be present, and all must concur, unless provision be otherwise made. Second, that where a public authority is conferred on individuals (not on a court) who are to act judicially, all must confer together, as that is the object of having more than one or two, but that a majority may decide." In *The People* v. *Nichols*, 52 N. Y. 478, where an act provided for the purchase by the State of certain relics of George Washington, the money appropriated to be paid only on the certificate of three persons named in the act that the relics were genuine, and that in their judgment it was desirable that they should be placed in the museum of the state library, the three met, and one refused to certify. The other two signed a certificate in which his refusal to concur with them was set forth. The certificate was held sufficient, following *Ex parte Rogers*, on the ground that the matter was of public concern, and " a majority act for the whole when all have met." This holding, PECKHAM, J., says, in the opinion, would be in accordance with common-law principles, but is also within 2 R. S. 555, § 27.

The rule has been applied to committees of towns. In *Martin* v. *Lemon*, 26 Conn. 192, a committee of a town had authority to remove obstructions and nuisances. One acted, without the advice or concurrence of the others, and it was held insufficient. STORRS, C. J., in the opinion, lays down the common-law rule as follows : " If the act is one which requires the exercise of discre-

tion and judgment, in which case it is usually termed a judicial act, unless special provision is otherwise made, the persons to whom the authority is given must meet and confer together, and be present when the act is performed, in which case a majority of them may perform the act ; or, after all of them have been notified to meet, a majority of them having met will constitute a quorum or sufficient number to perform the act, and according to some modern authorities the act may be legally done by the direction or with the concurrence of a major part of the quorum so assembled"; citing *Damon* v. *Granby*, 2 Pick. 345, in which the town chose a committee to superintend the building of a church, and it was held that a majority of such committee constituted a quorum, and that a majority of the quorum might act as the committee. That a majority of a town committee may bind, is held in *Hanson* v. *Dexter*, 36 Me. 516, and *Gallup* v. *Tracy*, 25 Conn. 10. Also to assessors. In *Williams* v. *School District*, 21 Pick. 75, which was a case where two of three school-district assessors acted, and the third did not participate and was not notified, but had been previously invited by one of the two to assist in the assessment, and had then and repeatedly declined to have anything to do with it, SHAW, C. J., says : "Where a body or board of officers is constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law, it is not necessary that all should concur in the act done. The act of the majority is the act of the body. And where all have due notice of the time and place of meeting, in the manner prescribed by law, if so prescribed, or by the rules and regulations of the body itself, if there be any, otherwise if reasonable notice be given, and no practice or unfair means are used to prevent all from attending and participating in the proceeding, it is no objection that all the members do not attend, if there be a quorum. In the present case, all three having had notice and an opportunity to act, the act of two is sufficient."

In New York it is held generally that where power is vested in a board of assessors composed of three, all must be notified to meet and consult, though a majority may decide. *Matter of*

*Beekman*, 1 Abb. Pr. 449; *Matter of Beekman*, 31 How. Pr. 16; *Matter of Palmer*, 31 How. Pr. 42.

The case of *George* v. *School District*, 6 Met. 497, is pertinent, as there the third assessor, like the third commissioner in the case at bar, failed to qualify by taking the oath. SHAW, C. J., in the opinion, says: "It appears by the facts stated that three assessors were duly elected by the town, at their annual meeting; that two of them were forthwith sworn, and thereby became qualified to act; but that the other one was not sworn, and, when notified of his election, made no reply; that he never in form declined to accept the office, but, when called on by the other two to act with them, he sent notice to them declining to act. But he gave no notice of this to the town, and the town did not proceed to treat his neglect to take the oath, as a vacancy, by choosing another in his stead. The law requires the town, at their annual meeting, to choose three or more assessors. Under these circumstances the court are of opinion, that when three assessors are duly chosen by the town, there is a board of assessors. Each is an assessor. But until qualified by taking the oath he is not competent to act. If a majority do qualify by taking the oath, and the third has not taken the oath, still if he has notice of their proceeding to execute the office, and decline to take the oath and act with them, their acts will be good in the same manner as if he had taken the oath and declined to act with them; because he is an assessor and the office is full. . . . There is a board, and of these, by force of the statute as well as by long usage, the majority may act." In our own State the general rule has been stated and applied in *Newel* v. *Exr. of Keith*, 11 Vt. 214; *Wolcott* v. *Wolcott*, 19 Vt. 37; and *Hodges* v. *Thacher*, 23 Vt. 455.

The rule of law being clearly established, and the distinctions clearly and sharply defined, it only remains to apply them to the commissioners in the case at bar. Were the commissioners provided for by the Act of 1867, and named in the instrument of assent of the town of Mt. Tabor, private agents, or clothed with a power, trust, or authority for merely private purposes? We think not. They represented no party or interest but the town, which is a public corporation, and the inhabitants thereof. Were

they, then, public officers? It is said, upon the authority of numerous cases, that every office is a public office the duties of which concern the public. In *Bradford* v. *Justices' Inferior Court*, 33 Ga. 332, the following excellent definition of a public officer is given: " When an individual has been appointed or elected in a manner prescribed by law, has a designation or title given him by law, and exercises functions concerning the public assigned to him by law, he must be regarded as a public officer." In *People* v. *Hayes*, 7 How. Pr. 248, commissioners to lay out a road were held to be public officers, and in *People* v. *The Comptroller*, 20 Wend. 596, commissioners appointed by the Governor, Secretary of State, and Comptroller to contract for and superintend the erection of an asylum, were held to be public officers, the question being upon their removal.

Whether the commissioners here were strictly public officers, however, is not material, for the legal distinction which determines the rule to be applied is not based upon the legal character of the board, but upon the origin and nature of its authority and the character of the duties imposed therewith. We think they at all events come clearly within the definition in *Williams* v. *School District, supra*, of " a body or board of officers constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law "; and in *Crocker* v. *Crane, supra*, of a board of commissioners appointed by a statute to decide a matter. These commissioners are officers appointed by the statute, which leaves their selection to the majority in numbers and amount of the legal tax-payers of the town. They are to act under an oath of office, and to perform certain duties the immediate object and purpose of which is to obtain for the town better railroad connections and facilities. That a railroad is a public work and interest, has long been established beyond a question. Jones Railroad Securities, c. 7 ; 1 Dillon Munic. Corp. 219 *et seq.*, and authorities cited. Also *Bennington* v. *Park*, 50 Vt. 178. In the discharge of these duties they were to act as the agents of the town, and were given power to make contracts which should bind the town, and to execute a certificate which should be conclusive evidence against the town. Although a town may be small, it is none the less a public corporation and

its inhabitants a " public." *Village of Winooski* v. *Gokey*, 49 Vt. 282. We think these commissioners were officers created by law, to discharge duties and execute an authority involving delibera- tion and the exercise of discretion and of a purely public charac- ter, and that they therefore come clearly within the well-estab- lished, common-law rule which gives validity to the decision and act of the majority when all have met and conferred.

But further than this, we think the question is conclusively set- tled in this State by a statute, doubtless intended to be declaratory of the common-law rule. Section 2, c. 4, Gen. Sts. provides that, " all words purporting to give a joint authority to three or more public officers *or other persons*, shall be construed as giving such authority to a majority of such officers *or other persons*, unless it shall be otherwise expressly declared in the law giving the au- thority." It will be observed that the language of WHEELER, J., in *Danville* v. *Montpelier & St. Johnsbury Railroad Co.* 43 Vt. 155, is simply a dictum, and unnecessary to the decision of the case, as it had already been held that the act done would have been invalid, even if participated in by, and done with the concur- rence of, all three of the commissioners, because they had pre- viously exhausted their authority and become *functus officio;* and the learned judge, by some inadvertence entirely overlooked the words " or other persons " in the statute. These words must be construed to apply to any and all persons, not public officers, who are appointed to execute any authority conferred upon them by a statute law. In *Hodges, Exr.* v. *Thacher, supra,* this statute, which REDFIELD, J., says, " seems to be nothing more than a codi- fication of the long-established [common-law] rule upon this sub- ject," is applied to the case of probate commissioners, who certainly cannot be regarded as public officers in the common acceptation of the term, but who are officers created by the law, as contradistin- guished from a board or tribunal created by act of the parties; and in *Thompson* v. *Arms,* 5 Vt. 546, and in *Newel* v. *Exr. of Keith, supra,* the common-law rule is applied to auditors appointed under the statute by the County Court. The statute above quoted provides that the act of the majority shall be good, " unless it shall be other- wise expressly declared in the law giving the authority." In the

14

case before us, the law, instead of declaring otherwise, seems to contemplate that a majority may act by making provision in section 7, for the filling, through the intervention of the Court of Chancery, of any vacancy in the board caused by death, removal, or incapacity to act, and none for filling vacancies otherwise occasioned, as by refusal to act, &c. Massachusetts has a statute almost precisely similar, Rev. Sts. c. 2, s. 6, clause 3, which was held in *Plymouth* v. *Commissioners of Plymouth*, 16 Gray, 341, to give validity to the award of a majority of the board of county commissioners, and has been applied to assessors, in *Howard* v. *Proctor*, 7 Gray, 131, and to fire-wardens, in *Coffin* v. *Nantucket*, 5 Cush. 272 ; and the common-law rule is applied to a school-district committee, in *Wilson* v. *Watersville School District*, 46 Conn.

We must hold that the certificate of a majority of the commissioners named in the instrument of assent of the town of Mount Tabor, all having met and deliberated, is a legal and valid certificate in compliance with the requirements of the law, and conclusive evidence of the facts set forth in it. The evidence offered by the defendant to impeach the truth of those facts was therefore properly excluded.

The signing of the bonds by two of the three selectmen was sufficient under section 92, c. 15, Gen. Sts.

The law being as we have held, none of the other proof offered by the defendant would constitute any defense to the bonds or coupons in the hands of a *bona-fide* holder, and it was therefore properly excluded.

*Judgment affirmed.*

BARRETT and POWERS, JJ., dissented.